IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRITNEE KENYON,<br>      Plaintiff,<br>v.<br>BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT 113, DANIEL STRUCK, THOMAS KRIEGER, MICHELLE HAMMER BERNSTEIN,<br>      Defendants,<br>   and<br>J.L.,<br>      Respondent in Discovery | Case No. 1:24-cv-09878<br><br>Judge Sharon Johnson Coleman |

**DEFENDANT MICHELLE BERNSTEIN'S MEMORANDUM IN SUPPORT OF HER MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) AND THE ILLINOIS CITIZEN PARTICIPATION ACT**

Defendant Michelle Bernstein, by and through undersigned counsel, respectfully submits this memorandum in support of her motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and the Illinois Citizen Participation Act, 735 ILCS 110/1 *et seq.*

**BACKGROUND**

The Constitution gives "to every citizen a right of investigating the conduct of those who are entrusted with the public business[.]" *Respublica v. Oswald*, 1 U.S. 319, 325 (Pa. 1788). There is "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). In light of that commitment, while this case concerns multiple defendants and claims, as against Defendant Michelle Bernstein this case is straightforward. Plaintiff Britnee Kenyon is a public employee of the Deerfield High School as a Theatre Director. Compl. ¶ 1. On or about December 9, 2023, Ms. Kenyon chose to repost three statements by an "antiracist" author named

1

Ibram X. Kendi who offered an *opinion* on Israel's response to the attacks that took place in Israel in October 2023. These posts accused the Israeli military of committing a "crime against humanity" and a "crime against history," as well as "ethnic[] cleans[ing]" and "[a]ttempts to wipe a people off the face of the earth[.]" *Id.*

Kenyon then alleges that Bernstein learned about this post, which circulated the social media accounts of those in the community of Deerfield High School including students, and shared Ms. Kenyon's post on a DHS Parent Group Facebook Page and two other Facebook pages and expressed her own *opinion* that Ms. Kenyon's post "slander[ed] the IDF and Israel" and encouraged parents to contact school officials "if you agree." *Id.* at ¶ 51; Compl. Ex. D, E & F. Kenyon does not deny that she posted what Bernstein shared. Kenyon only takes issue with the *opinion* expressed by Bernstein. The Complaint goes on to describe a review conducted by school officials (also named defendants) regarding Ms. Kenyon's post, as well as a statement of the Board of Education ("December 14 Statement") allegedly distributed to 40,000+ community members allegedly resulting in an exponential increase in communications "accus[ing] Ms. Kenyon of being an antisemite[.]" Compl. ¶ 65.

Shortly thereafter, Kenyon alleges that she then received a written reprimand from the School Board for her conduct in January 2024, Compl. ¶¶ 72, 88, and that Bernstein, in response to the fact that Kenyon did not receive more serious discipline for her conduct, again reshared the same images posted by Kenyon on social media and stated, "I am reposting these antisemitic memes since shamefully nothing was done about Britnee, the antisemitic Theatre Director at DHS." Compl. ¶ 96, Ex. I. In her complaint, Kenyon goes on to allege various actions taken by the school board or school officials relating to Kenyon's conduct on various social media platforms including Snapchat and Instagram, none of which Bernstein took part in.

Kenyon then filed this lawsuit, originally in state court, and brings three state-law claims against

Bernstein: defamation, false light, and tortious interference with contractual relations, counts 8 through 10 of her complaint. Kenyon has also asserted similar claims against three other defendants including two school officials and the Board of Education of Township High School District 113.

**ARGUMENT**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim that is "plausible on its face," with factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008). Factual allegations that are "merely consistent with" liability will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

There are three interlocking reasons why the Plaintiff's claims against Bernstein fail to state a claim: (1) Illinois' Citizen Participation Act protects Bernstein's speech and provides her immunity from a retaliatory lawsuit; (2) Bernstein's expressions of opinion about Kenyon's public statements are constitutionally protected and cannot be the basis for liability; and (3) Kenyon has failed to sufficiently allege the elements of her claims.

**I. The Illinois Citizen Participation Act provides Bernstein Immunity for Her Public Participation.**

Defendant Bernstein is entitled to immunity pursuant to Illinois' Citizen Participation Act, 735 ILCS 110/1 *et. seq.* ("The Act"). The Act is based on "the public policy of the State of Illinois that the constitutional rights of citizens and organizations to be involved and participate freely in the process of government must be encouraged and safeguarded with great diligence." 735 ILCS 110/5. The Illinois Legislature has mandated that the Act "be construed liberally to effectuate its purposes and intent fully." 735 ILCS 110/30. The Act is straightforward; "Acts in furtherance of the constitutional rights to petition, speech, association, and participation in government are immune from liability, regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome." 735 ILCS 110/15. The Act has been

3

applied as a governing substantive law creating a state-based immunity when addressing state-based claims in federal court in this district. *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 808 (N.D. Ill. 2011). "Though the ICPA is located in the civil procedure chapter of the Illinois Compiled Statutes, its operative provisions are not merely procedural in nature. Specifically, the ICPA created a new category of conditional legal immunity[.]" *Id.*

Under the Act, a claim is subject to dismissal when it is "based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government." 735 ILCS 110/15. The statute further provides that a responding party may only avoid dismissal if "the court finds that the responding party has produced clear and convincing evidence that the acts of the moving party are not immunized from, or are not in furtherance of acts immunized from, liability by this Act." 735 ILCS 110/20(c). Illinois courts require defendants to show two things in order to establish this immunity: (1) that their acts were in furtherance of their rights to speak, and (2) that "plaintiff's claims were solely based on, related to, or in response to the movant's" exercise of her rights. *Prakash v. Parulekar*, 177 N.E.3d 1, 12, 2020 IL App (1st) 191819, ¶ 34 (Ill. App. 2020) (citing *Sandholm v. Kuecker*, 962 N.E.2d 418, 430, 2012 IL 111443, ¶ 45 (Ill. 2012)).

First, Defendant Bernstein's conduct at issue in this case falls squarely within action taken in furtherance of her right to petition under the statute. Under the statute, "'Government' includes a branch, department, agency, instrumentality, official, *employee*, agent, or other person acting under color of law of the United States, a state, a subdivision of a state, or another public authority including the electorate." 735 ILCS 110/10 (emphasis added). The Illinois Supreme Court has emphasized that because the statute includes the electorate, "nothing in the words 'any act or acts' suggests a requirement of direct appeal to a government official. Further, the Act does not limit the protected rights to petitioning the government only." *Wright Dev. Group, LLC v. Walsh*, 939 N.E.2d

4

389, 399, 238 Ill. 2d 620, 639 (Ill. 2010). The Act broadly and liberally protects actions taken to influence public activity.

Bernstein is being sued for statements on social media, calling for the electorate to take action regarding the conduct of a government employee. The behavior of government employees is a public issue that affects the public as a whole. *See Prakash*, 177 N.E.3d at 12 ("Defendant's complaints to federal agencies in February 2014 were made to government officials in an effort to obtain favorable government action by way of preventing plaintiff from allegedly misusing federal funds in the appointment of a research professor."). Certainly, the behavior of a teacher affects the community whose children are or may be taught by her.

Second, Bernstein can show that Kenyon's suit is "solely" based on the exercise of her right to petition. *Sandholm*, 962 N.E.2d at 434. "[T]his prong is satisfied if the movant demonstrates that the lawsuit is meritless and was filed in retaliation of the movant's protected activities to deter him from further engaging in those activities[.]" *Prakash*, 177 N.E.3d at 12. A movant "for dismissal under the Act can show that a claim is 'meritless' only 'if a movant disproves some essential element of the nonmovant's claim.'" *Chadha v. North Park Elementary School Association*, 123 N.E.3d 519, 526, 2018 IL App (1st) 171958, ¶ 95 (Ill. App. 2018) (quoting *Garrido v. Arena*, 993 N.E.2d 488, 4962013 IL App (1st) 120446, ¶ 19 (Ill. App. 2013)). This requisite is met here where Bernstein offered her *opinion* on the post shared by Kenyon.

As a matter of law, statements of opinion are simply not actionable for defamation. It is a well-established doctrine that "a statement that does not contain any verifiable facts (as some call, 'an opinion') is not actionable under Illinois law." *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 727 (7th Cir. 2004). Illinois law is clear on this point: "statements that are capable of being proven true or false are actionable, whereas opinions are not." *Seitz-Partridge v. Loyola Univ. of Chi.*, 987 N.E.2d 34, 43, 2013 IL App (1st) 113409, P29 (Ill. App. 2013) (citing *Moriarty v. Greene*, 732

5

N.E.2d 730, 739, 315 Ill. App. 3d 225, 233 (2000)).

Whether a statement is an opinion is a question of law. *Brennan v. Kadner*, 814 N.E.2d 951, 957, 351 Ill. App. 3d 963, 969 (Ill. App. 2004). The test for determining whether an allegedly defamatory statement of opinion is actionable is "whether the statement contains an objectively verifiable assertion." *Wynne v. Loyola Univ. of Chi.,* 741 N.E.2d 669, 676, 318 Ill. App. 3d 443, 452 (Ill. App. 2000). "[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993).

In brief, Defendant Bernstein is being sued because she shared Kenyon's social media post and gave her opinion that the views expressed therein were "slandering the IDF and Israel" and "antisemitic." Compl. Ex. D-F. In her last post, Bernstein opined that Ms. Kenyon is antisemitic. Compl. Ex. I. It is black letter of law that such statements are protected statements of opinion, not fact. "Opinions and judgements may be harsh, critical, or even abusive, yet still not subject the writer to liability." *Vee See Constr. Co. v. Jensen & Halstead, Ltd.*, 399 N.E.2d 278, 281, 79 Ill. App. 3d 1084 (Ill. App. Ct. 1979). "Numerous courts have concluded that allegations of fascism, anti-Semitism, or other accusations of ethnic bigotry are not actionable as defamation." *Condit v. Clermont Cty. Review*, 675 N.E.2d 475, 478 (Ohio App. 1996) (collecting cases); *see also Buckley v. Littell*, 539 F.2d 882, 891-895 (2nd Cir. 1976), certiorari denied (1977), 429 U.S. 1062 (the word "fascist" is "loose[]" and "ambiguous and cannot be regarded as a statement of fact because of the "tremendous imprecision" of meaning and usage of the term); *Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988), certiorari denied (1989), 489 U.S. 1065 (the term "racist" is "hurled about so indiscriminately that it is no more than a verbal slap in the face not actionable unless it implies the existence of undisclosed, defamatory facts"); *Carto v. Buckley*, 649 F. Supp. 502, 508 (S.D.N.Y. 1986); *Raible v. Newsweek*, 341 F. Supp. 804, 807 (W.D.Pa. 1972); *Rambo v. Cohen*, 587 N.E.2d 140, 148-149 (Ind.App.1992) ("[T]he

6

phrase 'anti-Semitic' is not defamatory per se"); *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 837 (Ill. 2006) (holding that calling plaintiffs "deeply greedy people" was protected opinion).

Moreover, this lawsuit is retaliatory. Courts look to two factors in making such a determination: "(1) the proximity in time between the protected activity and the filing of the complaint, and (2) whether the damages requested are reasonably related to the facts alleged in the complaint and are a "good-faith estimate of the extent of the injury sustained." *Ryan v. Fox TV Stations, Inc.*, 979 N.E.2d 954, 962-963, 2012 IL App (1st) 120005, ¶ 23 (Ill. App. 2012). Most fundamentally, "retaliatory intent may be inferred when a claim lacking merit is filed shortly after the exercise of protected rights." *Hytel Group, Inc. v. Butler*, 938 N.E.2d 542, 555405 Ill. App. 3d 113, 126 (Ill. App. 2010). In *Prakash*, for example, the court held that a suit for defamation was not retaliatory where the plaintiff filed his lawsuit four years after the alleged defamation and there was no further reason for the defendant to petition the government on the same issues. 177 N.E.3d at 12. Similarly, in *Chadha v. North Park Elem. Sch. Ass'n*, 123 N.E. 3d 519, 546, 2018 IL App (1st) 171958 (Ill. App. 2012), the court held that a defamation suit was not retaliatory where the plaintiff's complaint was filed more than three years after the alleged defamation and there was no further reason for the defendant to petition the government because the structure at the heart of the dispute had been demolished.

In stark contrast to the cases above, Kenyon filed her lawsuit just six months after Defendant Bernstein made her fourth Facebook post on January 30, 2024, and there is still reason for Bernstein to continue to engage in protected speech on the matter since Ms. Kenyon remains an employee of the school district. Compl., ¶ 9-10 (alleging she is employed as DHS's Theatre Director and in her capacity as such, is considered a "public employee.") Accordingly, Kenyon's lawsuit will certainly have the effect of "chill[ing] [Bernstein's] participation in government or stifling political expression," *Chadha*, 123 N.E. 3d at 546 (citation omitted), on this issue as it becomes even

7

more widely debated in the public arena because of Kenyon's decision to file this lawsuit.

Finally, there is the factor of damages. Kenyon seeks a total of $150,000 (or $50,000 for each claim) from Bernstein for her social media posts, "plus attorneys' fees, costs, *punitive damages*, prejudgment interest, and for such other or further relief the Court deems just and proper." Complaint. ¶¶ 160, 172, 178. She fails, however, to trace her claims of damages to any specific conduct by Bernstein. Notably, Kenyon seeks the same, exact amount of damages ($50,000 for each violation) from each of the defendants regardless of their alleged misconduct (violation of constitutional rights, infliction of emotional distress, invasion of privacy, defamation, etc.) or the extent of their role in the alleged misconduct. In fact, she blames various defendants for the same harm to her reputational harm and emotional distress.[1] Who then is actually responsible for causing the harm? "Based on the nature of plaintiff's alleged injuries, it is difficult to see how such a high demand can be factually justified." *Ryan*, 979 N.E.2d at 963.

In summary, because Kenyon's lawsuit has been filed such a short time after Bernstein's protected activity and will certainly chill Bernstein's speech, and because Kenyon's claim of damages against Bernstein is unsupported and unreasonable, the Act properly applies here and Kenyon's case against Bernstein should be dismissed.

## II. The First Amendment Bars Kenyon's Suit.

In the alternative, this Court should apply the First Amendment to dismiss the case against

---

[1] For example, Kenyon alleges that it was the December 14 Statement issued by Defendant Struck – not Bernstein's posts – that led to threatening communications and accusations that she was an antisemite and "constant abuse and harassment." Compl. ¶¶ 61-64, 100, 102. As Kenyon alleges, the December 14 Statement was circulated to more than 40,000 members in the community. Kenyon also alleges that her mental anguish is due to the December 14 Statement - not to Ms. Bernstein. *Id.* at 104-106. Kenyon goes on to allege that she has "been the recipient of incessant harassment and abuse from members of the community" because of the Board of Education's investigation into her Instagram and Snapchat accounts – not because of Ms. Bernstein. *Id.* at ¶ 94; *see e.g.*, ¶¶ 68-80. She also claims that school officials including Defendant Krieger, forced her to recount her traumatic experience causing her "great mental, emotion, and physical damage." *Id.* at ¶¶ 86-87, 101. Ms. Bernstein is not alleged to have taken part in any of the conduct above resulting in the harm complained of by Ms. Kenyon, yet she seeks damages in the same amount from Bernstein as all other defendants.

Bernstein. "The first amendment prohibits attaching civil liability to statements of opinion." *Stevens*, 855 F.2d at 398 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974)). As discussed above, the undisputed facts are that Bernstein is being sued for expressing her opinion that Kenyon's social media post is slanderous and antisemitic. Second, even if Bernstein's speech was not protected, Kenyon has failed to sufficiently allege actual malice, much less present "clear and convincing evidence" of malice.

### A. Bernstein's Speech is Protected.

To ensure that public debate does not suffer for lack of "imaginative expression" and "rhetorical hyperbole," the First Amendment protects from liability any statement that "cannot reasonably be interpreted as stating actual facts." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 2 (1990). Accordingly, "the First Amendment protects statements on matters of public concern that are not provably false." *Republic Tobacco Co.*, 381 F.3d at 728. Statements that are not "provable as false" generally cannot lead to liability consistent with the First Amendment's guarantee of freedom of speech. *Milkovich*, 497 U.S. at 19-20.

Plaintiff incorporates by reference herein the argument above regarding the meritless nature of this suit. Defendant Bernstein is being sued for the manner in which she described the statements of the Plaintiff, namely that such statements were "slandering the IDF and Israel," Compl. Ex. D, and "antisemitic." Compl. Ex. I. Such statements are opinions and thus protected by the First Amendment. *Wilkow v. Forbes*, Inc., 241 F.3d 552, 555 (7th Cir. 2001) (A statement is not actionable "if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts."). Describing someone as a racist or antisemitic is an opinion of their character. It is not a statement of fact that can be proved or disproved. *See cases supra*, especially *Carto*, 649 F. Supp. at 508 (statement describing the defendant's "racial and religious bigotry" not actionable as "imprecise concepts which cannot

9

be proven true or false as statements of fact," because "[t]here is no one opinion of what constitutes 'racial and religious bigotry,' or for that matter what constitutes 'bigotry' generally"). Whether a particular statement is antisemitic is inherently subjective and cannot be proven true or false. As the Seventh Circuit explained in *Stevens*, accusations of racism are not actionable, unless they imply "undisclosed" facts. 855 F.2d at 402. No undisclosed facts are alleged here. Quite the opposite, all facts were disclosed by Bernstein to support her opinion by sharing the very post by Kenyon that was the basis for her opinion. While Kenyon may disagree with Bernstein's opinion, such disagreement is not actionable as defamation. The Constitution protects the free and candid dissemination of ideas and views, especially "supercharged rhetoric," and even "careless and inaccurate accusations." *Stevens*, 855 F.2d at 399.

This constitutional protection does not apply merely to the defamation claim. Kenyon cannot evade First Amendment protections for speech by dressing up her defamation claims as other torts such as false light. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 51-56 (1988) (plaintiff cannot evade First Amendment restrictions on defamation claim by pleading another tort); *Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. Cir. 2013) (First Amendment barred claims for false light and tortious interference based on defendants' non-defamatory speech). In other words, the First Amendment protection applies to all of Kenyon's claims and should lead to their dismissal. See *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 882 N.E.2d 1011, 1019227 Ill. 2d 381, 393 (Ill. 2008); *Next Techs., Inc. v. Beyond the Office Door LLC*, 2020 U.S. Dist. LEXIS 102413, *40 (W.D. Wis. 2020).

Finally, there is an irony in this case that should not go unnoticed and which further supports that Bernstein's statements constitute protected speech. In her complaint, Kenyon asserts that her own statements of "her political opinion regarding the ongoing conflict in Gaza," Compl. ¶ 110, constitute "a matter of public concern as it related to her political opinions and beliefs as a private

10

citizen" and are thus protected speech. Compl. ¶ 112. Kenyon argues that her speech is protected as opinion, but someone's response to and characterizations of those very opinions are somehow not protected and even punishable under civil law. This simply cannot be. Just as Kenyon can express her views publicly, Bernstein can respond to those views with her own opinions and not be subject to liability thereto.

### B. Kenyon Has Failed to Plead Malice.

Even if Bernstein's statements were not shielded from civil liability, Kenyon's defamation claim against Bernstein still fails due to her failure to sufficiently allege actual malice (i.e. that Bernstein knew that her statement was false or that she acted with reckless disregard of whether it was false or not).

In *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964), the Supreme Court held the First Amendment required public officials pursuing defamation claims against their critics to bear the heavy burden of establishing "actual malice." Public figures are generally defined as those who are "intimately involved in the resolution of important public questions." *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 164 (1975). As the Seventh Circuit elaborated further in *Stevens*, a public figure includes public officials (elected and unelected), as well as school employees because they possess discretion over the operation of schools and thus their performance "is open to public comment." *Stevens*, 855 F.2d at 403 (citing *Rosenblatt v. Baer*, 383 U.S. 75, 85-86 (1966) and holding school principal was a public figure and thus her performance "is open to public comment"). Accordingly, where – as here – the speech at issue is made regarding a school employee and is part of an effort to petition the Board of Education, the public official must prove by clear and convincing evidence that the statement was made with actual malice. *Id.* at 402.

Ms. Kenyon is a public figure and thereby subject to the strict standard in *Sullivan* for yet another reason. An individual may "voluntarily inject[] himself or [be] drawn into a particular public

controversy and thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351 (1974); *see also O'Donnell v. CBS, Inc.* 782 F.2d 1414, 1417 (7th Cir. 1986) (finding that a private individual who injects himself into a public controversy is a "limited purpose public figure"). Kenyon is a limited purpose public figure in this case. She voluntarily injected herself into the public arena by posting on social media an Instagram story regarding her beliefs about Israel's conduct in Gaza. Compl. ¶ 41. She knew the post could be viewed by students and members of the community and that it would likely invoke a strong response given the strong language used in her post – *i.e.* that Israel and its military were engaged in "attempts to wipe a people off the face of the earth," and "perpetrators" of ethnic cleansing, "crimes against humanity," and suggestions that all "antiracist Jews" would be joining Palestinians to oppose Israel's response.[2]

To prove actual malice, a plaintiff must demonstrate that the defendant had knowledge that the statement was false or acted with reckless disregard of whether it was false or not. *New York Times Co.*, 376 U.S. at 279-80. "Knowledge of falsity means that the defendant was actually aware that the contested publication was false" while "[r]eckless disregard of the truth or falsity of a publication occurs when the defendant in fact entertained serious doubts as to its truth, or a high degree of awareness of its probable falsity." *Harris v. Quadracci*, 48 F.3d 247, 252 (7th Cir. 1995) (internal citations, quotations, and alterations omitted). Nothing in the complaint supports the allegation that Bernstein knew that her description of Kenyon's speech as "antisemitic" or "slanderous" of Israel was false. (In fact, Bernstein still considers those statements to be true).

### III. Kenyon Has Failed to State a Claim.

When reviewing a motion to dismiss under Rule 12(b)(6), while factual allegations in a complaint are taken as true, judges "need not accept as true legal conclusions, or threadbare recitals

---

[2] Plaintiff's above argument explaining that her speech is constitutionally protected opinion applies regardless of whether Kenyon is a public figure.

12

of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Though a complaint need not contain "detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007).

### A. Defamation (Count VIII)

Under Illinois law, "[t]o establish defamation, the plaintiff must show that (1) the defendant made a false statement about the plaintiff, (2) the defendant published that false statement to a third party, and (3) the published statement damaged the plaintiff's reputation." *Project44, Inc. v. FourKites, Inc.*, 209 N.E.3d 427, 431, 2022 IL App (1st) 210575, ¶ 21 (Ill. App. 2022). As delineated above, an opinion cannot meet the standard for liability as a matter of law. That alone requires dismissal.

Moreover, Kenyon's complaint fails to sufficiently allege the first element, that Bernstein's statements were false. A federal executive order requires that "all executive departments and agencies (agencies) charged with enforcing Title VI shall consider" the International Holocaust Remembrance Alliance's (IHRA's) definition of antisemitism. 84 C.F.R. 68779 (Dec. 16, 2019), https://www.govinfo.gov/content/pkg/FR-2019-12-16/pdf/2019-27217.pdf. This non-legally binding working definition of antisemitism, which was adopted by the IHRA on May 26, 2016, reads as follows: "Antisemitism is a certain perception of Jews, which may be expressed as hatred toward Jews. Rhetorical and physical manifestations of antisemitism are directed toward Jewish or non-Jewish individuals and/or their property, toward Jewish community institutions and religious facilities." The post the Plaintiff shared accused the Israeli military of a "crime against humanity" and a "crime against history." The IHRA notes as explicit examples of antisemitism: "[d]rawing comparisons of contemporary Israeli policy to that of the Nazi." and "[d]enying the Jewish people their right to self-determination, e.g., by claiming that the existence of a State of Israel is a racist endeavor." This Court need not and should not decide the truthfulness of Bernstein's statements,

13

but in light of the IHRA definition, Bernstein's assessment of Kenyon's statements meets this definition. And Kenyon's complaint makes no attempt to allege why Bernstein's opinions of her statement were false other than to allege that she is Jewish. However, the Jewish community recognizes that even Jewish people can be guilty of antisemitism. *Antisemitism, Explained: Can Jews Be Antisemitic?*, My Jewish Learning, https://www.myjewishlearning.com/the-hub/antisemitism-explained-can-jews-be-antisemitic/ (last visited Nov. 11, 2024).

Moreover, and as explained above, the complaint fails to allege that Kenyon suffered damages as a result of Bernstein's conduct. Kenyon's alleged damages, like the threats she claims she experienced, are entirely unmoored and untraceable to Bernstein's conduct. For example, Kenyon claims that Bernstein's post caused someone in Canada to threaten her. Compl. ¶ 98. First, Kenyon fails to present any evidence of the threats or specify in her complaint what these threats consisted of and how they were communicated to her. Second, Kenyon alleges that it was only after Defendant Struck released the December 14 Statement to 40,000+ members in the community that she received threats including the one from Canada. Bernstein had nothing to do with the preparation of and/or release of the December 14 Statement.

Kenyon's unfounded and unsupported assertions are the very sort that the Supreme Court has warned against; there simply is no adequately traced chain of causation between Bernstein's acts and these alleged threats.

### B. False-Light Invasion of Privacy (Count IX)

The elements for a false light claim are that "(1) the plaintiff[] [was] placed in a false light before the public as a result of the defendants' actions; (2) the false light in which the plaintiff[] [was] placed would be highly offensive to a reasonable person; and (3) the defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Kirchner v. Greene*, 691 N.E.2d 107, 115-16, 294 Ill. App.

14

3d 672, 682, (Ill App. 1998). For all the reasons discussed above and incorporated herein by reference, Plaintiff has failed to allege either actual malice or falsity regarding Bernstein's opinions.

### C. Tortious Interference with Contractual Relations (Count X)

The elements of "tortious interference with existing contracts are: the existence of a valid contract; defendant's knowledge of the contract; the intentional and malicious inducement of the breach; a subsequent breach; and damages resulting from the breach." *Audition Div., Ltd. v. Better Business Bureau, Inc.*, 458 N.E.2d 115, 120120 Ill. App. 3d 254, 258 (Ill. App. 1983). Plaintiff has failed to allege at least the second and third elements.

First, there is simply no true allegation whatsoever that Bernstein knew of any specific contractual agreement or had any intent to interfere with one. Bernstein cannot interfere with the Collective Bargain Agreement ("CBA") if she has no knowledge whatsoever of the CBA and no reason to know of the CBA. The Complaint does not properly allege that she did, but simply that Bernstein was aware of Kenyon's employment generally. Compl. ¶ 175.

Moreover, Plaintiff never called or urged for any breach of contract; no cited statement or allegation in the complaint induces any breach, let alone any intentional or malicious breach. Bernstein simply never called for Kenyon's termination. Her statements never urge that any action be taken inconsistent with any contractual agreement; instead, she simply called for accountability and for the information to be sent to the School Board. Bernstein never induced the Board to breach anything, nor can any of her statements be identified as such an inducement.

### CONCLUSION

For all the reasons above, Defendant Michelle Bernstein respectfully requests that this Court dismiss Plaintiff's three counts against her. She also requests attorneys' fees pursuant to 735 ILCS 110/25, which awards those fees to defendants in actions brought under the Illinois Citizen Participation Act.

Dated: November 18, 2024  Respectfully submitted,

CHARLES E. HERVAS,
(ARDC No. 06185117)
HERVAS, CONDON & BERSANI, P.C.
333 W. Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone: 630-773-4774
chervas@hcbattorneys.com

**THE AMERICAN CENTER FOR LAW AND JUSTICE**

By: */s/ Nathan J. Moelker*      GEOFFREY R. SURTEES*
NATHAN J. MOELKER**      PO Box 60
(VA Bar No. 98313)      New Hope, KY 40052
201 Maryland Avenue, NE      (502) 549-7020
Washington, D.C. 20002      gsurtees@aclj.org
Telephone: (202) -641-9160
Facsimile: (202) 546-9309
Email: nmoelker@aclj.org

ABIGAIL SOUTHERLAND**
(TN. Bar. No. 026608)
625 Bakers Bridge Ave., Suite 105-121
Franklin, Tennessee 37067
Tel. 615-599-5572
Fax: 615-599-5180
Email: asoutherland@aclj.org

*Counsel for Defendant Michelle Bernstein*

\* Admitted in this Court's General Bar.
\*\* Admitted Pro Hac Vice

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on November 18, 2024, he caused a copy of the foregoing Defendant's Memorandum in Support of the Motion to Dismiss to be e-filed using the CM/ECF e-filing system which will serve all parties of record.

*/s/ Nathan J. Moelker*