**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRITNEE KENYON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:24-cv-09878 |
| v. | ) | |
| | ) | Hon. Sharon Johnson Coleman |
| BOARD OF EDUCATION TOWNSHIP | ) | |
| HIGH SCHOOL DISTRICT 113, DANIEL | ) | |
| STRUCK, Individually and in his Official | ) | |
| Capacity, THOMAS KRIEGER, | ) | |
| Individually and in his Official Capacity, | ) | |
| and MICHELLE HAMMER BERNSTEIN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| J.L., | ) | |
| | ) | |
| Respondent-In-Discovery. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
MICHELLE BERNSTEIN'S FRCP 12(b)(6) MOTION TO DISMISS**

NOW COMES Plaintiff, Britnee Kenyon ("Plaintiff" or "Ms. Kenyon), by and through her

attorneys, and for her Response in Opposition to Defendant Michelle Bernstein's ("Bernstein")

Motion to Dismiss the Verified Amended Complaint ("Complaint") pursuant to Federal Rule of

Civil Procedure 12(b)(6) ("Motion to Dismiss"), hereby states as follows:

## I.    FACTUAL BACKGROUND

Plaintiff, a Jewish woman, has been employed as the DHS Theatre Director since 2019.

ECF No. 1-1 at ¶¶1, 9. Prior to December 2023, Plaintiff had never been accused of any

wrongdoing or inappropriate behavior by the Board of Education Township High School District

113 ("Board"), her peers, her students, or parents of students. *Id.* at ¶39. Nor had she ever received

a warning or other disciplinary action by DHS or the Board. *Id.* at ¶40.

Prior to December 9, 2023, Plaintiff began following noted antiracist author Ibram X. Kendi because District 113 Superintendent of Diversity, Equity, and Inclusion, Mirah Anti, organized a book study of Kendi's book, *How to be an Anti-Racist*. *Id.* at ¶46. Ms. Anti's book study was authorized and endorsed by District 113. *Id.* at ¶47. On December 9, 2023, Plaintiff shared the Story on her private Instagram account. *Id.* at ¶ 41. The Story was not her original post or in her own words. It was a repost of one made by Kendi concerning the military conflict in Israel and Gaza. *Id.* at ¶2. The Story was privately shared, not published for the purpose of expressing her political views and/or beliefs in her capacity as DHS's Theatre Director, and automatically removed from her Instagram account 24 hours after it was shared. *Id.* at ¶43, ¶45.

At some point shortly thereafter, Bernstein learned about the Story. *Id.* at ¶48. In response, Bernstein used the pseudonym "Michelle Leah" to create a post on the "DSH Parent Group Facebook Page" accusing Plaintiff of posting "memes" that "slandered Israel." *Id.* at ¶49. Bernstein further demanded that parents "Call Bruce [Law] and send to the [Board of Education] if you agree." *Id.* at ¶51. Bernstein shared the contents of these Facebook posts on the "Deerfield High School – Friend of the Arts" Facebook Page and on the "Highland Park / Highwood, Planning Our Future" Facebook page. *Id.* at ¶52. On information and belief, Bernstein falsely complained to the Board, that Plaintiff was an anti-Semite and that her Story "slandered" Israel. *Id.* at ¶55.

On December 14, 2023, and following Bernstein's numerous Facebook posts concerning Plaintiff, Defendant Thomas Krieger ("Krieger"), the Board's Chief Human Resources Officer, emailed Plaintiff ordering her to attend a pre-disciplinary meeting on December 15, 2023. *Id.* at ¶53. Krieger stated that Plaintiff's sharing of the Story constituted "harassment or bullying." *Id.* Hours later, Defendant Daniel Struck ("Struck"), the Board's former president, issued a statement concerning the Story to more than 40,000 individuals in the in the Deerfield, Bannockburn,

Riverwoods, Highland Park, and Highwood communities ("Struck Statement"). *Id.* at ¶¶56, 59-60. Struck never contacted Plaintiff to gather any facts before issuing the Struck Statement which maliciously and recklessly portrayed Ms. Kenyon as an anti-Semite who "disparages the personal beliefs and human decency of a substantial portion of our student body." *Id.* at ¶¶57, 63.

Plaintiff attended the December 15, 2023, pre-disciplinary meeting as the Board ordered. *Id.* at ¶66. She explained that she shared the Story because she firmly believed it was a call for peace and not "anti-Israel." She stated that as a practicing Jewish woman, she would never speak out against Jewish people. *Id.* at ¶67. Later that day, Krieger advised Plaintiff that the Board scheduled a second pre-disciplinary meeting for December 18, 2023 "to discuss complaints received regarding [her] use of Snapchat to communicate with students, in violation of Board Policy 5-125 and 5-125 Aps 1 and 2." *Id.* at ¶68.

On January 9, 2024, Krieger sent Plaintiff a "Written Reprimand" which was to be made a part of her employment record and used as a basis for limiting her freedom of speech and expression and future discipline or termination. *Id.* at ¶72. The Written Reprimand included a narrative section revealing that Krieger had investigated Plaintiff's private Instagram posts and allegedly inappropriate communication with students using Snapchat's messaging feature. Krieger used these actions as a pretext to discipline Plaintiff for the Story. *Id.* at ¶73. Plaintiff objected to most of the Written Reprimand and demanded Krieger accept Plaintiff's proposed changes. The Final Written Reprimand (*Id.* at ¶88) removed the text of the Story, which camouflaged the truth behind Plaintiff posting the story and altered the meaning of Kendi's original post. *Id.* at ¶89.

When Bernstein learned Plaintiff was not terminated, she again disseminated patently false and disparaging statements regarding Plaintiff, such as Plaintiff was an anti-Semite that "at least one anti-Semitic incident happened in her program between students." *Id.* at ¶96. Bernstein also

stated "I guess when the students see that their leader can come back to school with zero consequences or accountability, it's open season for hating the Jews." *Id.* More egregiously, she claimed "Jewish parents are defending [Plaintiff] in order to secure their kids a good part in future performances. ie (sic.) selling their souls to the devil." *Id.* Immediately following the publishing of Bernstein's statements, Plaintiff was targeted with harassment and threats, including one believed to be from Canada. *Id.* at 98. This caused irreparable damage to Plaintiff's professional reputation and mental wellbeing and forced her to take a mental health leave of absence.

The Complaint seeks redress for Bernstein's dissemination of maliciously false statements under theories of defamation *per se* (*id.* at ¶¶150-160), false-light invasion of privacy (*id.* at ¶¶161-172), and tortious interference with contractual relations (*id.* at ¶¶173-178). Bernstein seeks dismissal for three reasons: (a) the Complaint is barred by the Illinois Citizen Participation Act ("CPA"); (b) her statements regarding Plaintiff were expressions of opinion and therefore not actionable; and (c) failing to plead the necessary elements of her claims.

For the reasons that follow, the motion should be denied. First, the CPA does not bar Plaintiff's claims because she seeks to recover damages for personal harm to her reputation, not to stifle Bernstein's purported "political expression." Second, Bernstein's published statements are not afforded First Amendment protection because the statements were not expressions of opinion. Instead, they unduly prejudiced Plaintiff in her profession as the DHS Theatre Director. Finally, Plaintiff's well-pleaded allegations have been sufficiently pled.

## II.  **FRCP 12(b)(6) LEGAL STANDARD**

To withstand dismissal, a complaint must be plausible on its face, meaning that the plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond

providing "labels and conclusions," and "be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 548 (2007). In other words, a complaint must give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

## III. <u>ARGUMENT</u>

### A. <u>THE ILLINOIS CITIZEN PARTICIPATION ACT DOES NOT PRECLUDE PLAINTIFF'S LAWSUIT AGAINST BERNSTEIN</u>

In somewhat ironic fashion, Bernstein argues that her brutal campaign to destroy Plaintiff's reputation and career was simply Bernstein offering her opinions which are protected under the CPA. She submits that she was sued for "calling for the electorate to take action regarding the conduct of a government employee." ECF No. 25-1 at pg. 5. On that same point, she argues that Plaintiff's suit is solely intended to stifle Bernstein's right to petition. *Id.* Bernstein's argument for dismissal under the CPA specifically addresses Plaintiff's defamation *per se* claim, though it broadly contends the CPA bars all claims against Bernstein.

Under the CPA, a defendant may move "to dispose of a claim in a judicial proceeding" on (1) the grounds that she engaged in an act "in furtherance of [her] rights of petition, speech, association, or to otherwise participate in government" and (2) the plaintiff's claim "is based on, relates to, or is in response to" that protected act of citizen participation. 735 ILCS 110/15. Only if Bernstein first satisfies her burden of proof will the burden shift to Plaintiff, requiring her to produce "clear and convincing evidence that the acts of the moving party are not immunized from, or are not in furtherance of acts immunized from, liability" under the Act. 735 ILCS 110/20(c); *see also Sandholm v. Kuecker*, 2012 IL 111443, ¶ 56, 962 N.E.2d 418. Under this framework, the dismissal of a plaintiff's claim is not proper unless the defendant can establish the "claim is a

meritless, retaliatory SLAPP as contemplated by the Act." *Id.* at ¶30. This is necessarily a factual question.

In August 2007, Illinois joined more than 20 other states in enacting anti-SLAPP legislation in the form of the Citizen Participation Act. *Sandholm*, 2012 IL 111443, ¶33 (citing 735 ILCS 110/1 *et seq.*). "SLAPPs, or 'Strategic Lawsuits Against Public Participation,' are lawsuits aimed at preventing citizens from exercising their political rights or punishing those who have done so." *Wright Development Group, LLC v. Walsh*, 238 Ill. 2d 620, 630, 939 N.E.2d 389, 395 (2010). "SLAPPs use the threat of money damages or the prospect of the cost of defending against the suits to silence citizen participation." *Id.* (citing 735 ILCS 110/5). A SLAPP is "based upon nothing more than defendants' exercise of their right, under the First Amendment, to petition the government for a redress of grievances." *Westfield Partners, Ltd. v. Hogan*, 740 F. Supp. 523, 525 (N.D. Ill. 1990).

SLAPPs are, by definition, meritless. *Sandholm*, 2012 IL 111443, ¶34. Plaintiffs in SLAPP suits do not intend to win but rather to chill a defendant's speech or protest activity and discourage opposition by others through delay, expense, and distraction. *Id.*

Section 15 of the Illinois Citizen Participation Act ("CPA") provides,

> This Act applies to any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.

> Acts in furtherance of the constitutional rights to petition, speech, association, and participation in government are immune from liability, regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome.

735 ILCS 110/15 (LexisNexis).  In 2012, the Illinois Supreme Court construed the phrasing "based on, relates to, or is in response to" to mean solely based on, relating to, or in response to "any act or acts of the moving party in furtherance of the moving party's rights of petition, speech,

association, or to otherwise participate in government." *Sandholm*, 2012 IL 111443, ¶45 (citing

735 ILCS 110/15). The Illinois Supreme Court determined,

> [W]here a plaintiff files suit genuinely seeking relief for damages for the alleged defamation or intentionally tortious acts of defendants, the lawsuit is not solely based on defendants's (sic.) rights of petition, speech, association, or participation in government. In that case, the suit would not be subject to dismissal under the Act. It is clear from the express language of the Act that it was not intended to protect those who commit tortious acts and then seek refuge in the immunity conferred by the statute. *Id.*

Plaintiff's lawsuit genuinely seeks relief for damages she sustained (and continues to

sustain) as a direct result of Bernstein's defamatory attacks and campaign to get her fired. To

establish a *prima facie* defamation claim, a plaintiff must show that a defendant publicized a false

statement that damaged the plaintiff's reputation. *Garrido v. Arena*, 2013 IL App (1st) 120466, ¶

28, 993 N.E.2d 488 (citation omitted). Damages are presumed if the statement was defamatory *per

se*. *Id.* Illinois law recognizes five categories of statements that are considered actionable *per se*:

"(1) those imputing the commission of a criminal offense; (2) those imputing infection with a

loathsome communicable disease; (3) those imputing an inability to perform or want of integrity

in the discharge of duties of office or employment; (4) those that prejudice a party, or impute lack

of ability, in his or her trade, profession or business; and (5) those imputing adultery or

fornication." *Van Horne v. Muller*, 185 Ill. 2d 299, 307, 705 N.E.2d 898, 903 (1998). Bernstein's

false statements regarding Plaintiff fall into categories (1), (3), and (4).

The Seventh Circuit in *Cody v. Harris*, 409 F.3d 853 (7th Cir. 2005) explained, "[i]n some

cases, personal integrity is so intertwined with job skills, that an attack upon it could constitute

defamation *per se.*" *Id.* at 858 (citing *Kumaran v. Brotman*, 247 Ill. App. 3d 216, 225, 617 N.E.2d

191, 186 Ill. Dec. 952 (1993) (holding that a newspaper article accusing a school-teacher of filing

"scam" lawsuits was defamatory *per se* be-cause part of a teacher's job is to set a good example

and serve as a role model for students). The Court in *Cody* noted that Illinois courts identify good character more strongly with certain occupations such as teachers and clergy than with others. *Jaros v. Village of Downers Grove*, 2020 IL App (2d) 180654, ¶ 62, 180 N.E.3d 125. Here, it is undisputed that Plaintiff is contractually employed as a teacher. ECF No. 1-1.

Bernstein posits that her statements are not actionable because they constitute mere expressions of opinion. In determining whether a statement is one of fact or opinion, a court should consider the totality of the circumstances and whether the statement can be objectively verified as true or false. *Kumaran,*, 247 Ill. App. 3d 216 at 228.

Count VII of the Complaint seeks redress under a theory of defamation *per se*. It alleges Bernstein published patently false statements about Plaintiff, to wit: (1) Plaintiff is anti-Semitic ((ECF No. 1-1 at 129); (2) Plaintiff engaged in illegal slanderous behavior (ECF No. 1-1 at 133); (3) Plaintiff's slanderous actions fomented an anti-Semitic incident between students in DHS's Theatre program (*id.*); (4) Plaintiff is the leader of anti-Semitic students, and by not terminating Plaintiff "it's open season for hating the Jews" (*id.*); and (5) Plaintiff was favoring students whose parents defended Plaintiff's right to post the Story on her private Instagram account. *Id.* Each of Bernstein's published statements implies that Plaintiff lacks the requisite integrity and morality, and is therefore unfit to teach in a "heavily Jewish district" because she is a slanderous anti-Semite intent on instigating anti-Semitic incidents among the student body. *See, e.g., Kumaran*, 247 Ill. App. 3d 216 at ("We have concluded that the article could be found to be defamatory *per se* . . . because it could be found to prejudice him in his capacity as a schoolteacher by maligning his ability to serve as a role model for his pupils."). Here, Bernstein's false and abusive statements achieved their intended effect, as Plaintiff was subjected to harassment, bullying, and received numerous threats from members of the community. ECF No. 1-1 at ¶¶ 98-99.

Bernstein relies on *Sandholm*; however, that case supports a denial of the present motion to dismiss. *Sandholm* involved a high school coach's defamation suit against the people who had petitioned to remove him allegedly abusive behavior. The coach sought to recover damages for personal harm to his reputation, not to stifle political expression. *Sandholm*, 2012 IL 111443 at ¶ 57. The Court in *Sandholm* held that the coach's lawsuit was not a SLAPP because it was not *solely* based on, related to, or in response to acts in furtherance of the rights of petition and speech. *Id.* The Court also determined that the burden never shifted to the plaintiff under 735 ILCS 110/20(c). *Sandholm* is instructive and this Court should take a similar approach when evaluating the sufficiency of Plaintiff's claims against Bernstein.

Here, Bernstein had the burden to "show that there are undisputed facts that demonstrate plaintiff's claim is meritless." *Prakash*, 2020 IL App (1st) 191819 at ¶40; *Ryan v. Fox TV Stations, Inc.*, 2012 IL App (1st) 120005, ¶ 26. Like the defendant in *Sandholm*, Bernstein failed to meet her burden. Claims are meritless only if the movant disproves some essential element of the claims. *Id.* at ¶39. Bernstein has not done that.

What Bernstein did do was manufacture a fictious "anti-Semitic incident" between Plaintiff's students, falsely claim that Plaintiff favored students whose parents defended her for posting the Story, portray Plaintiff as the "leader" of the anti-Semitic students, and demand her termination because allowing her to maintain her teaching position would mean "open season for hating the Jews." ECF No. 1-1 at 133. In short, Bernstein maliciously portrayed Plaintiff as an anti-Semite in a "heavily Jewish district" to get Plaintiff fired. ECF No. 1-1 at 129. The unambiguous language of the CPA shows that the CPA was not intended to protect those who commit tortious acts and then seek refuge in the immunity conferred by the CPA. *Prakash v. Parulekar*, 2020 IL App (1st) 191819, ¶35 (citing *Sandholm*, 2012 IL 111443 at ¶45).

9

Bernstein failed to satisfy her burden under the CPA because the Complaint is neither meritless nor retaliatory. Plaintiff's verified allegations demonstrate that she is suing Bernstein for, *inter alia*, mental and physical damages resulting from the irreparable harm Bernstein's actions have caused to Plaintiff's professional reputation. Bernstein insists Plaintiff's lawsuit is retaliatory because it was filed six months after Bernstein published the defamatory statements. Her argument on this point is legally flawed. Under Illinois law, the statute of limitations for defamation *per se* and false-light invasion of privacy claims is one (1) year from the date of publication. *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill. 2d 129, 334 N.E.2d 160 (1975). Bernstein's latest publication (of which Plaintiff is aware) occurred on or about January 30, 2024. ECF No. 25-1 at pg. 7. Bernstein's retaliation argument ignores both the statute of limitations and the concept of mitigation of damages. Bernstein's argument fails as a matter of law because Plaintiff's claims are not retaliatory and not meritless for the reasons stated above.

Bernstein posits that she can engage "in protected speech" regarding Plaintiff's employment because Plaintiff was not terminated. ECF No. 25-1 at p. 7. The suggestion is disingenuous since Bernstein does not reside in Deerfield and does not have any students at DHS. Bernstein resides, and was served with process, in Boca Raton, Florida. *See* Affidavit of Service attached hereto as Exhibit A. At the December 9, 2024 initial status conference, Bernstein's lawyers advised the Court that Bernstein lives in Florida. These facts support Plaintiff's claims that Bernstein's campaign against Plaintiff's continued employment at DHS is actionable.

In sum, the CPA does not bar Plaintiff's claims against Bernstein because they relate solely to Bernstein's tortious conduct and not to "chill Bernstein's participation in government" (indeed, there is no evidence of any government participation by Bernstein) nor to stifle Bernstein's

political expression. The dismissal of Plaintiff's claims pursuant to the CPA is therefore unwarranted as a matter of law.

**B.  BERNSTEIN'S STATEMENTS ARE NOT
    ENTITLED TO FIRST AMENDMENT PROTECTION**

Bernstein incorrectly argues her statements are constitutionally protected because she was merely expressing her opinion regarding Plaintiff. Instead, her defamatory statements are actionable and not protected by the First Amendment. A false assertion of fact can be defamatory even when couched within apparent opinion or rhetorical hyperbole. *Hadley v. Doe*, 2015 IL 118000, ¶ 33, 34 N.E.3d 549. "The test is restrictive: a defamatory statement is constitutionally protected only if it cannot be reasonably interpreted as stating actual fact." *Id.* In analyzing whether a statement is a nonactionable expression of opinion or a defamatory statement of fact, courts consider "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content." *Id.* A statement will receive First Amendment protection from a defamation suit only if it cannot be reasonably interpreted as stating actual facts about the plaintiff. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 14, 607 N.E.2d 201, 208 (1992).

To reach her erroneous conclusion, Bernstein focuses only on her statements that Plaintiff is anti-Semitic and slandered Israel and the IDF by posting the Story, while conveniently ignoring the remainder of her statements: "I am reposting the anti-Semitic memes since shamefully nothing was done about [Plaintiff], the anti-Semitic Theatre Director at DHS. Since then at least one anti-Semitic incident happened in her program between students." Amended Complaint, Exhibit I. "I guess when the students see that their leader can come back to school with zero consequences or accountability, it's open season for hating the Jews." *Id.* "Sadly, many parents, even Jewish parents are defending [Plaintiff] in order to secure their kids a good part in future performances. ie (sic.)

selling their souls to the devil." *Id.* Each of these statements imputes that (a) Plaintiff lacks the integrity to perform her employment duties and (b) unduly prejudices Plaintiff's employment with DHS. What is more, Bernstein falsified an anti-Semitic incident between theatre students after the Board declined to terminate Plaintiff's employment and further suggested that Plaintiff is assisting and/or countenancing hate crimes in her classroom. Bernstein's statements are made as if they were facts and thus, cannot possibly be considered opinions.

Finally, Bernstein asserts that Plaintiff's claims are subject to dismissal because Plaintiff failed to plead malice. In general, where the allegedly defamed person is a private individual, she need only demonstrate that the defendant was negligent in its publication of the alleged defamatory falsehood. *Jacobson v. CBS Broadcasting, Inc.*, 2014 IL App (1st) 132480, ¶26, 19 N.E.3d 1165. Where the plaintiff is found to be a public figure, however, she must prove, by clear and convincing evidence, that the defendant acted with "actual malice" in making the defamatory expression. *Id.* (citing *Gertz v. Robert Welch*, 418 U.S. 323 (1974)).

Bernstein's argument on this point is legally flawed since Plaintiff is clearly a private individual and not a public figure as that term is defined. *See Gertz v. Robert Welch*, 418 U.S. 323, 351 (1974) (finding that "public figure status" may arise in one of two situations, "in some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.")

In the event this Court disagrees and finds Plaintiff to be a "public figure" or "public official," then her allegations that Bernstein acted with knowledge that her statements were false or made them in reckless disregard of whether they were true or false are sufficient. *Jaros* 2020 IL

App (2d) 180654, ¶39 (citation omitted). Plaintiff sufficiently alleged that Bernstein's statements were unequivocally false, lacked any factual basis, and were made with reckless disregard for the truth. *See* ECF No. 1-1 at ¶¶97, 155, 162, 166, 172. Since Plaintiff sufficiently alleged malice, and since the determination of the existence of malice presents a question of fact, Bernstein's motion should be denied.

### C.   PLAINTIFF'S ALLEGATIONS ARE WELL-PLED

#### 1.   Plaintiff's defamation *per se* and false-light invasion of privacy claims are sufficiently alleged.

Bernstein's motion is implicitly based on the assumption that her statements about Plaintiff are true. Naturally, Plaintiff rejects any assertion that (a) she is an anti-Semite, (b) slandered Israel and the IDF, (c) instigated an anti-Semitic incident among her students, or (d) favored students whose parents supported Plaintiff's posting of the Story. In any event, the determination of whether a statement is true is a question for the jury. *Moore v. People for the Ethical Treatment of Animals, Inc.*, 402 Ill. App. 3d 62, 71, 932 N.E.2d 448, 457 (1st Dist. 2010).

Bernstein asks this Court to construe the reposting of Kendi's Story as an inherently anti-Semitic act (meaning Bernstein's statements were true) and conclude that Plaintiff failed to plead the necessary elements of her defamation and false light claims. Bernstein's argument is somewhat confusing since she also (wrongly) states that the Court need not decide the truthfulness of the statements in order to rule on the present Rule 12(b)(6) motion. ECF No. 25-1 at p. 14.

The Complaint explicitly alleges that Bernstein's statements about Plaintiff were unequivocally false, made without any factual basis, made with reckless disregard for the truth, and for the sole purpose of harming Plaintiff (getting her fired). *See* ECF No. 1-1 at ¶¶151-159; 162-170. The Complaint thus rejects any notion that the statements in Bernstein's numerous posts and statements are truthful statements. *Id.*

Bernstein's arguments on this point attempt to insert additional facts into the Complaint and are tantamount to a request for this Court to accept her statements as true, despite Plaintiff's well-pleaded factual allegations. Bernstein's argument is entirely misplaced. When a motion to dismiss is filed under Rule 12(b)(6), all facts alleged in the complaint must be taken as true, and no external facts may be considered. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) Following the well-established and well recognized law on Rule 12(b)(6), this Court should deny Bernstein's Motion to Dismiss the defamation *per se* and false-light invasion of privacy claims.

> **2.    Plaintiff's claim for tortious interference with contractual relations is sufficiently alleged.**

Under Illinois law, the elements of a tortious interference with contractual relations are: (1) a valid and enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of the contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the third party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach. *Ruddock v. First National Bank*, 201 Ill. App. 3d 907, 919 559 N.E.2d 483, 490 (2nd Dist. 1990).

Plaintiff has pled that she was employed pursuant to a contract, namely a collective bargaining agreement ("CBA"), of which Bernstein was aware.  Plaintiff also pled that Bernstein intentionally and unjustifiably attempted to induce the Board to breach the CBA and/or a termination of Plaintiff's employment under the CBA. Complaint at ¶¶175-176., ECF No. 25-1 at p. 15. Bernstein's argument is at odds with these well-pleaded allegations. *See Levenstein*, 164 F.3d at 347.

A Rule 12(b)(6) to dismiss tests the sufficiency of the complaint, not the merits of the case. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). In evaluating a motion to dismiss, the court shall "construe the complaint in the light most favorable to the

plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Bernstein's argument concerning the sufficiency of Plaintiff's tortious interference with contractual relations claim attacks Plaintiff's factual allegations by contending they are "simply no[t] true." Such an argument is insufficient under Rule 12(b)(6) and supports a denial of Bernstein's Motion to Dismiss.

WHEREFORE, Plaintiff Britnee Kenyon respectfully requests the Court enter an order denying Defendant Michelle Bernstein's Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss, and awarding Plaintiff such further or other relief this Court deems just and proper.

Respectfully submitted,

Britnee Kenyon

By:     */s/ Adam M. Berger*
        Adam M. Berger, One of Her Attorneys

Adam M. Berger (ARDC # 6269402)
Myles R. Carroll (ARDC # 6335660)
Miller Berger, LLC
20 N. Clark St., Ste. 525
Chicago, Illinois 60602
(312) 283-4563
adam@millerberger.com
myles@millerberger.com

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on December 23, 2024, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which will automatically send notification of this filing to all counsel of record.

*/s/ Myles R. Carroll*
Myles R. Carroll (ARDC # 6335660)
