UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRITNEE KENYON,<br>　　　　　　Plaintiff,<br>　　v.<br>BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT 113, DANIEL STRUCK, THOMAS KRIEGER, MICHELLE HAMMER BERNSTEIN,<br>　　　　　　Defendants,<br>　　and<br>J.L.,<br>　　　　　　Respondent in Discovery | Case No. 1:24-cv-09878<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Beth W. Jantz |

## DEFENDANT MICHELLE BERNSTEIN'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant Michelle Bernstein, by and through undersigned counsel, hereby replies to Plaintiff's Response In Opposition to Defendant Bernstein's Motion to Dismiss, ECF No. 45 (hereinafter "Response" or "Response to MTD"). Plaintiff Kenyon's suit remains premised on Defendant Bernstein's expression of her opinions, criticizing Kenyon for speech that she characterized as "antisemitic." Both the First Amendment and Illinois law require that Kenyon's suit against Bernstein be dismissed.

**ARGUMENT**

**I.    Kenyon Cannot Revise Her Complaint By Way of A Response Brief.**

While Kenyon's Complaint alleged that this lawsuit is based entirely on Bernstein's description of Kenyon's statements as "slandering the IDF and Israel," Compl. Ex. D, and "antisemitic,"[1] Kenyon

---

[1] Compl. Ex. I; Compl. ¶ 151; ¶ 161 (alleging that Bernstein "maliciously and intentionally accus[ed] Ms. Kenyon, a Jewish woman, of posting anti-Semitic 'memes' that 'slandered Israel.'"); *id.* at ¶ 165 (alleging that "Bernstein once again disseminated patently false and disparaging statements concerning Ms. Kenyon, once again falsely declaring that Ms. Kenyon is 'antisemitic.'"); *id.* at ¶ 155 (alleging that Bernstein's "Posts contain statements . . . [that] accused Ms. Kenyon of being anti-Semitic without any factual basis and with reckless disregard for the truth.").

1

now seeks in her Response to make new allegations or provide a new basis to support her claims against Bernstein. Specifically, Plaintiff Kenyon now alleges that Bernstein falsely accused "Plaintiff [of] engag[ing] in illegal slanderous behavior (ECF No. 1-1 at 133); (3) Plaintiff's slanderous actions fomented an anti-Semitic incident between students in DHS's Theatre program (*id.*); (4) Plaintiff is the leader of anti-Semitic students, and by not terminating Plaintiff 'it's open season for hating the Jews' (*id.*); and (5) Plaintiff was favoring students whose parents defended Plaintiff's right to post the Story on her private Instagram account. *Id.*" Response to MTD, at 8. These assertions, however, appear nowhere in Kenyon's Complaint. Perhaps this is why Kenyon's citations are not to the Complaint but to an exhibit containing a post by Bernstein made **after** Kenyon's alleged injuries. *Id.* (citing ECF No. 1-1, at 133).

Plaintiff's attempt to amend her complaint to include the new allegations cited above by way of her Response is impermissible. In *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984), the court held that a party cannot amend a complaint by argument in a brief in opposition to a motion to dismiss. In fact, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Id.* at 1107. Because none of the statements or allegations was ever addressed or discussed in the Complaint, they cannot serve as support for Kenyon's claims now.

It should be further noted that neither the post cited by Plaintiff (ECF No. 1-1 at 133), nor any of Defendant Bernstein's other posts at issue in this lawsuit, support the new allegations made by Plaintiff Kenyon in her response. Kenyon mischaracterizes what Bernstein wrote in the cited exhibit. What Defendant Bernstein actually said in the post is (1) that an "antisemitic incident happened in her program between students"; (2) Kenyon leads her students, and by a lack of accountability, "it's open season for hating the Jews;" and (3) "many parents, even Jewish parents are defending Britnee in order to secure their kids a good part in future performances. ie selling their souls to the devil." Compl. Ex. I.

First, it is clear from Bernstein's post that she never made any statement that Kenyon leads a group of antisemitic students or that she has actually favored students whose parents defended her. This latter statement by Bernstein refers to parents' behavior – not Kenyon's. Second, Kenyon has not even alleged that these statements meet any of the other elements of defamation. The Complaint contains no answerable allegation that Bernstein's reference to an antisemitic incident at the school was false, or that parents sought Kenyon's favor.

This Court has emphasized that defamation suits are dependent **on the specific words used**. This is because "knowledge of the exact words alleged often is necessary for the framing of an appropriate responsive pleading. For example, if the words reflect an opinion, rather than an assertion of fact, [the Plaintiff] will not have a claim for defamation." *Hoth v. American States Ins. Co.*, 735 F. Supp. 290, 292 (N.D. Ill. 1990). Plaintiff Kenyon's attempts to add new allegations and twist words to suggest new meanings in support of her claims against Bernstein are improper and fail to support her claims against Bernstein.

## II. The Illinois Citizen Participation Act Requires the Dismissal of Kenyon's Claim as Meritless and Retaliatory.

None of Kenyon's attempts to recast the nature of her complaint changes the fact that it is meritless and retaliatory under the Illinois Citizen Participation Act (ICPA).

Kenyon first argues that her suit is not retaliatory where only six months have passed, and her statute of limitations is one year. Kenyon cites no support whatsoever for the claim that a suit avoids being retaliatory simply because it is filed within the requisite statute of limitations.

Next, Kenyon argues that Bernstein's move to Florida makes her desire to speak about Kenyon's conduct "disingenuous." No support is cited for the assertion that a parent doesn't have an interest in speaking out about misconduct that took place at a time when her child was enrolled in the school district. Bernstein still has many friends at Deerfield. Further, as a proud Zionist and granddaughter of a holocaust survivor who now works with holocaust survivors for a living, Bernstein

3

has many genuine reasons to be concerned with Kenyon's conduct.

Finally, Kenyon denies that Bernstein engaged in government participation by criticizing the actions of a public employee. Once again, Kenyon wholly ignores the authority provided by Defendant Bernstein on this issue, *see Prakash v. Parulekar*, 177 N.E.3d 1, 12, 2020 IL App (1st) 191819, ¶ 34 (Ill. App. 2020) (citing *Sandholm v. Kuecker*, 962 N.E.2d 418, 430, 2012 IL 111443, ¶ 45 (Ill. 2012)), and fails to provide any legal authority of her own.

Plaintiff Kenyon's attempt to demonstrate that her lawsuit against Bernstein is not meritless is equally unpersuasive. A claim for damages does not save an otherwise meritless claim under the ICPA. As even Kenyon acknowledges, to establish a defamation claim, a "plaintiff must first show that a defendant publicized a **false** statement." Response to MTD, at 7. Opinions, such as the ones expressed by Bernstein, cannot be proven false. Indeed, "a statement that does not contain any verifiable facts (as some call, 'an opinion') is not actionable under Illinois law." *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 727 (7th Cir. 2004).

Every one of Bernstein's statements at issue in this case meets this legal standard. Accusations of antisemitism and slanderous activity are paradigmatic examples of opinion that cannot be verified one way or another by any factfinding. Just last month, yet another federal court held that insults like "antisemitic" are not actionable. *Druskinis v. StopAntisemitism*, 2024 U.S. Dist. LEXIS 219511, *22 (E.D. Mich Dec. 4, 2024). As the court in *Druskinis* explained, "**labeling Druskinis's conduct as antisemitic is a protected opinion because such a claim is not 'provable as false**.' Whatever biases or prejudices Druskinis may hold in his heart are not verifiable by the Court—or anyone else, for that matter." *Id.* (citation omitted) (emphasis added). In *Druskinis*, there was a factual dispute over what specifically the plaintiff did. But it did not matter or make the defendant liable for the characterization of plaintiff's disputed actions as antisemitic. The court held that the defendant was free to share an "opinion that the conduct was antisemitic. And there is no way for a judge or jury to

4

definitively resolve that disagreement. There is no objective, underlying truth to root out, no way to prove that this opinion is false. At bottom, StopAntisemitism was free to interpret Druskinis's actions as antisemitic." *Id.* at *23-24.

Notably, while Defendant Bernstein has cited many cases concluding that the term "antisemitic," as well as analogous terms like "racist," is a statement of opinion – not a verifiable fact – Kenyon does not cite a single case reaching a contrary conclusion. In fact, Kenyon wholly ignores case authority on this issue. In particular, *Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989), is both strikingly on point here and dispositive, holding that accusations against a school principal of racism were legally protected opinion. Kenyon completely ignores that binding case, but it governs here in a closely analogous situation.

Just as the court determined in *Druskinis*, whatever biases or prejudices Kenyon may or may not hold in her heart are not verifiable by the Court – or anyone else. Any trial of the matter would likely result in differing experts on the matter – each offering widely different opinions on the proper definition of antisemitism, requiring the jury to then weigh in on which opinion is better. That is not an objective inquiry that a jury can perform. The same is true of Kenyon's new and widely misrepresented accusations against Bernstein. Bernstein's reference to an antisemitic incident at the school is not a verifiable assertion. Witnesses could certainly identify incidents that occurred in Kenyon's class but would disagree on the opinion whether those incidents are "antisemitic." Likewise, Bernstein's statement that "when the students see that their leader can come back to school with zero consequences or accountability, it's open season for hating the Jews," is pure opinion. Compl. Ex. I. Notably, Kenyon does not deny that as a teacher, she leads her students; this is in fact acknowledged repeatedly by Kenyon in her Response. Response to MTD, at 8 (citing *Kumaran*, 247 Ill. App. 3d at 227 (emphasizing a teacher's "ability to serve as a role model for his pupils.")). Thus, the apparently defamatory statement here would be Bernstein's statement that "it's open season for hating the Jews."

5

That statement is clearly hyperbolic opinion. It is not a factual allegation that anyone is physically hunting Jews in Illinois. The context and nature of the statement make clear that it is an opinion about the effects and consequences of Kenyon's publicly known acts. It is, in other words, "a theory, conjecture, or surmise." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993).

Finally, consider Bernstein's statement that "many parents, even Jewish parents are defending Britnee in order to secure their kids a good part in future performances. ie selling their souls to the devil." Compl. Ex. I. That statement is also opinion. How could discovery be conducted to determine whether parents have sold souls to the devil? As one court wryly observed, the devil is likely not subject to personal jurisdiction in American courts. *United States ex rel. Mayo v. Satan & His Staff*, 54 F.R.D. 282, 283 (W.D. Pa. 1971). Further, this statement does not say anything about Kenyon's conduct one way or another, but instead about the conduct of other parents.

As it relates to all of Kenyon's allegations, "[t]here is no objective, underlying truth to root out, no way to prove that this opinion is false." *Druskinis*, 2024 U.S. Dist. LEXIS 219511, *23-24. No jury could determine whether an act is properly characterized as antisemitic or whether an opinion that the effects of the School District's conduct have created "open season for hating the Jews" is an appropriate characterization.

Plaintiff Kenyon's reliance on *Kumaran v. Brotman*, 247 Ill. App. 3d 216, at 228 (1993), is not to the contrary. *Kumaran* concerned a specific accusation of filing "scam" or "bogus" lawsuits. Such a claim "is verifiable by reviewing the evidence in plaintiff's cases." *Id.* In other words, the alleged defamatory statements were statements of fact because they could be directly and objectively verified as true or false. That is not the case here.

### III. The First Amendment Protects Bernstein's Opinions.

For the same reasons explained above and incorporated herein, Kenyon's attempt to punish Bernstein's protected expression of opinion must fail. The First Amendment protects from liability

any statement that "cannot reasonably be interpreted as stating actual facts." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 2 (1990). In the face of clear legal authority demonstrating that Bernstein's opinions are protected speech, Kenyon fails to present any authority to the contrary. Even if this Court were to consider Kenyon's new unsupported allegations, the result remains the same because they too represent opinions that Plaintiff can neither verify nor prove false.

Moreover, Kenyon claims that she is a private individual requiring only a demonstration of negligent publication. Kenyon fails, however, to provide legal authority to support her assertion that she is "clearly" a private individual. Kenyon also fails to distinguish the more recently cited cases relied upon by Bernstein demonstrating that Kenyon may be deemed a limited public figure.

Finally, Kenyon never alleged that Bernstein made her statement with knowledge of its falsity. And while the complaint also alleges reckless disregard, Kenyon must go beyond providing "labels and conclusions," and "be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 548 (2007). "[F]ormulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The complaint fails to allege facts to demonstrate reckless disregard or to demonstrate the bald allegation that Bernstein knew her opinion was false. Compl., at ¶¶ 154-55 (merely alleging that Bernstein's comments were "patently false").

### IV.     The Complaint Still Fails to State a Claim.

Bernstein incorporates the above arguments here by reference under Rule 12(b)(6). Regardless of whether this case is retaliatory, as a suit challenging the expression of opinions, it cannot be the basis for liability under 12(b)(6).

> **1. Plaintiff has failed to sufficiently allege claims for defamation per se and false-light invasion of privacy as to Bernstein.**

First, Bernstein is not – as Kenyon suggests – asking this Court to decide the truthfulness of the statements alleged to be defamatory. As Bernstein has exhaustively explained, truthfulness simply cannot be determined here because Bernstein's comments were opinion – not fact.

7

Second, it remains true – despite Kenyon's protests – that her Complaint contains nothing more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). As pointed out above, Kenyon merely alleges that some of the statements are "false," but fails to present factual support for this conclusory assertion. As for Kenyon's newly added and improper allegations, there is no allegation whatsoever in the Complaint that the statements were even false; nor does the Complaint provide facts to support such an assertion.

While it is true that all facts alleged in the Complaint must be taken as true, *see* Response to MTD, at 14 (citing *Levenstein*, 164 F.3d at 347), the more recent ruling in *Twombly* requires the plaintiff to properly allege the factual matter to show that Bernstein's opinions are in fact false. Kenyon has failed to do so here.

**2. Plaintiff has similarly failed to sufficiently allege a claim for tortious interference with contractual relations as to Bernstein**.

A similar problem plagues the claim for tortious interference with a contract. It is simply untrue – as Kenyon argues here – that Bernstein disputes Plaintiff's factual allegations. *See* Response to MTD at 15 ("Bernstein's argument concerning the sufficiency of Plaintiff's tortious interference with contractual relations claim attacks Plaintiff's factual allegations"). What Bernstein explains is that Kenyon pleads the bare elements of the claim and does *not* provide the factual matter to support her threadbare allegations.

For example, Kenyon never sufficiently alleges the second element of her claim: that Bernstein actually knew of her contract or the provisions therein. Kenyon only alleges that Bernstein knew she was employed generally. Compl. ¶ 175. Taking as true the factual allegation that Bernstein knew of Kenyon's employment in no way establishes the Complaint's *legal* conclusion that she somehow knew about the terms of Kenyon's contract and induced a breach of those specific terms. *See Becker Logistics, LLC v. Marks*, 2024 U.S. Dist. LEXIS 218261, *7-8 (N.D. Ill. 2024) (reviewing cases which indicate

that actual knowledge of a contract and the terms therein cannot be inferred unless, for example, the defendant is a fellow employee, or a board member or executive who knew or should have known of the contract and its provisions).

Kenyon has also failed to allege the other elements of the claim. For example, Kenyon fails to sufficiently allege that Bernstein's actions constituted an intentional and unjustified breach where she alleges that it was the other school Defendants who are responsible for the breach. In other words, Kenyon's allegations against Bernstein are twice removed from the actual breach. *See* Compl. ¶¶ 176; 118 (alleging Bernstein complained of Kenyon's posts, which then prompted review by the Board of Education which then resulted in breaches by the Board, i.e., reprimand **by the Board**, failure **of the Board** to provide equal opportunity to present evidence; failures **by the Board** to provide Kenyon with statements of the complainant and identify the complainant; failure **by the Board** to remain objective; and failure **by the Board** to keep findings confidential and issue a written reprimand). How then can Bernstein be responsible for inducing the so-called breaches when her actions allegedly only resulted in a review by the Board? Bernstein had no control over how the Board conducted its review, which was the nature of the alleged breach. Her actions were not a direct or proximate result of the Board's alleged breach of the CBA.

Dated: January 13, 2025                                         Respectfully submitted,

CHARLES E. HERVAS,
(ARDC No. 06185117)
HERVAS, CONDON & BERSANI, P.C.
333 W. Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone: 630-773-4774
chervas@hcbattorneys.com

**THE AMERICAN CENTER FOR
LAW AND JUSTICE**

By: */s/ Nathan J. Moelker*
NATHAN J. MOELKER**
(VA Bar No. 98313)
201 Maryland Avenue, NE
Washington, D.C. 20002
Telephone: (202) -641-9160
Facsimile: (202) 546-9309
Email: nmoelker@aclj.org

ABIGAIL SOUTHERLAND**
(TN. Bar. No. 026608)
625 Bakers Bridge Ave., Suite 105-121
Franklin, Tennessee 37067
Tel. 615-599-5572
Fax: 615-599-5180
Email: asoutherland@aclj.org

GEOFFREY R. SURTEES*
PO Box 60
New Hope, KY 40052
(502) 549-7020
gsurtees@aclj.org

*Counsel for Defendant Michelle Bernstein*

\* Admitted in this Court's General Bar.
\*\* Admitted Pro Hac Vice

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on January 13, 2025, he caused a copy of the foregoing Defendant's Reply in Support of her Motion to Dismiss to be e-filed using the CM/ECF e-filing system which will serve all parties of record.

*/s/ Nathan J. Moelker*