IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRITNEE KENYON,<br>        Plaintiff,<br>v.<br>BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT 113, DANEIL STRUCK, THOMAS KRIEGER, and MICHELLE HAMMER BERNSTEIN,<br>        Defendants. | Case No. 1:24-cv-09878<br><br>Judge Sharon Johnson Coleman |

**DEFENDANTS' REPLY IN SUPPORT OF THE MOTION TO
DISMISS COUNTS II THROUGH VII OF THE AMENDED COMPLAINT**

 Kenyon fails to address the arguments raised in by Struck, Krieger, and the Board of Education in support of their Motion to Dismiss. Struck, Krieger, and the Board therefore respectfully ask the Court to grant their Motion and to dismiss Counts II through VII of the Amended Complaint.

## I. Argument

### A. Kenyon Cannot Maintain Her Claim For Breach of the Collective Bargaining Agreement.

 Nowhere in her Response does Kenyon address the first fundamental defect in her breach of contract claim, which is that she is not a party to the contract that she seeks to enforce. It is well-settled that an individual employee is not party to a collective bargaining agreement and lacks standing to sue for breach of such an agreement, absent allegations that the union breached its duty of fair representation. Doc. 31 at 4, *citing Mahoney v. City of Chicago*, 293 Ill. App. 3d 69, 73–74 (1st Dist. 1997). Kenyon does not allege that her union failed in its duty of fair representation. Having failed to respond to this issue, Kenyon has waived the argument, and her breach of contract claim fails for this reason alone.

 Kenyon's remaining arguments are also entirely baseless. Kenyon does not dispute that the CBA provides for the resolution of grievances and final and binding arbitration of any unresolved

1

grievances. CBA Art. XVI, Doc. 1-1 at 99-102. She also does not dispute that her current claim falls within the definition of a "grievance" under the contract. CBA Art. XVI.B, Doc. 1-1 at 99. Effectively conceding that she did not attempt invoke the grievance process, Kenyon argues that she was not obligated to do so because (1) filing a grievance would have been futile and (2) the Board breached the CBA first. Doc. 46 at 5-8. These are not proper arguments for this Court or for the state court in which Kenyon originally filed this case. The Educational Labor Relations Act vests "exclusive primary jurisdiction over arbitration disputes" with the Illinois Educational Labor Relations Board ("IELRB"). *Bd. of Educ. of Warren Twp. High Sch. Dist. 121 v. Warren Twp. High Sch. Fed'n of Teachers, Local 504, IFT/AFL-CIO*, 128 Ill. 2d 155, 163 (1989). Kenyon does not dispute this principle of Illinois law. Instead, she asserts that the Board waived this argument by removing the case to federal court. Doc. 46 at 8. However, objections to subject matter jurisdiction cannot be waived. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see also United States v. Cotton*, 535 U.S. 625, 630 (2002). Further, simply removing a case to federal court or filing a motion to dismiss does not waive one's right to enforce a contractual arbitration clause. *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008); *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726–27 (7th Cir. 2004).

Kenyon also relies on *Carver v. Nall*, 172 F.3d 513 (7th Cir. 1999), to assert that the "varied nature" of Plaintiff's claims and the parties involves excuses her from exhausting her contractual remedies under the CBA. Doc. 46 at 8. However, *Carver* stands only for the proposition that a settlement of a union grievance before the Illinois State Labor Relations Board did not bar the plaintiff from pursuing a separate Section 1983 claim under the doctrine of *res judicata*. The Board is not arguing that Kenyon's Section 1983 claim is barred by *res judicata,* and nothing in *Carver* suggests that an arbitration clause in a CBA is rendered moot whenever an employee separately

asserts claims that are not subject to arbitration. *Carver* therefore does not apply.

While Kenyon's arguments as to arbitrability are within the exclusive jurisdiction of the IELRB, even if the Court were to address those claims, they would be easily dismissed as baseless. Kenyon's contention that the Board's purported breach of the CBA excused her from resolving her breach of contract claim through the grievance and arbitration process is absurd. The grievance language in the contract applies to any "claim, by a bargaining unit member or the Association, that there has been a violation, misinterpretation, or misapplication of any of the provisions of this Agreement." Doc. 1-1 at 99, Art. XVI.B. If the mere allegation of a breach of contract excused an employee from using the grievance and arbitration procedures in the contract, those procedures would be meaningless, and the Court would be usurping the role that the parties entrusted to the grievance and arbitration process. *See Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 568 (1960) (holding that courts "have no business weighing the merits" of a claim that is subject to arbitration under a collective bargaining agreement).

Kenyon also offers no cogent explanation for her futility argument. She asserts that filing a grievance with lower-level supervisors would have been futile because Struck was Board President and Krieger the Chief Human Resources Officer. However, the CBA specifically addresses this, providing for grievances to be initiated at the appropriate step of the procedure when they arise from actions of an authority above the principal. Doc. 1-1 at 101, CBA Art. XVI.E.2. Kenyon could have filed a grievance and sought an appeal to the Superintendent or the full Board of Education. Doc. 1-1 at 100, CBA Art. XVI.D, Steps 3 and 4. Further, the CBA provides that grievances not resolved through the grievance process are to be decided by final and binding arbitration. Doc. 1-1 at 100-101, CBA Art. XVI.D, Step 5. Kenyon offers no explanation as to why arbitration would have been a futile gesture.

3

3382524.2

In short, Kenyon is not the proper party to enforce the CBA, this Court is not the proper forum to address any arguments as to why she was not obligated to arbitrate, and in any event her arguments against arbitration are patently without merit. Count II should therefore be dismissed.

### B. Kenyon's Claims Against Struck Are Barred by Absolute Immunity

As set forth in Defendants' initial brief, Illinois common law is clear that "school board officials cannot be held civilly liable for … statements made within the scope of their official duties." *Smoler v. Bd. of Educ. for W. Northfield Sch. Dist. #31*, 524 F. Supp. 3d 794, 804 (N.D. Ill. 2021). Kenyon does not dispute this principle of law but argues that Struck's statements could not have been made in the course of his official duties because "issuing a public statement concerning a schoolteacher's private Instagram post" was not specifically listed as one of the job duties of Board President in the relevant Board of Education policy. Doc. 46 at 9. However, the very Board Policy that Kenyon cites in her Response specifically provides that the Board President's duties include serving as the Board's "spokesperson to the media." *See* Exhibit 1.[1]

Further, Kenyon specifically alleges in her Complaint that, in issuing the statement, Struck was "purporting to act on behalf of the Board of Education." Doc. 1-1 at 11, Amd. Compl., ¶ 56. Struck signed his statement in his official capacity as Board President. *Id.* at 135. Kenyon also alleges that Struck's statement amounted to a breach of the CBA. Doc. 1-1 at 12, Amd. Compl., ¶ 64. As Struck is not personally a party to the CBA, his actions could not violate the CBA unless he was acting in his capacity as Board President. Further, it is well-established that an elected official is not subject to suit for communications with constituents regarding matters within the

---

[1] Ordinarily, for purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court's review is limited to the well-pled factual allegations in the complaint. However, the Court may properly take judicial notice of official Board materials without converting Defendants' motion to a motion for summary judgment. *Smoler*, 524 F. Supp. 3d at 811, n.5.

scope of their responsibilities. *Blair v. Walker*, 64 Ill. 2d 1 (1976) (governor could not be sued for defamation for press releases related to plaintiffs); *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 617–618 (7th Cir. 2001) (board president and other school officials were absolutely immune from defamation claim based upon communications with parents about plaintiff teacher's absence from school).

Kenyon also argues that Struck cannot be immune because he purportedly failed to follow the disciplinary and investigative procedures under the CBA. However, immunity under Illinois law is absolute and cannot be overcome by, for example, showing improper motivation, knowledge of the statement's falsity, or malice. *Klug v. Chicago Sch. Reform Bd. of Trustees*, 197 F.3d 853 (7th Cir. 1999). Kenyon cites no authority suggesting that a plaintiff can overcome absolute immunity to sue a public official by arguing that a statement was made in violation of a collective bargaining agreement. Kenyon's claims against Struck should therefore be dismissed.

### C. Kenyon's Claims Against Struck and Krieger Are Barred By the Local Government and Governmental Employees Tort Immunity Act

Kenyon's claims against Struck and Krieger are also barred by the Local Government and Governmental Employees Tort Immunity Act. In response to Defendants' Motion, Kenyon first argues that immunity does not apply under Section 2-202 of the Tort Immunity Act where the defendant's actions are "willful and wanton." Doc. 46 at 10. However, Struck and Krieger do not rely on Section 2-202, but 2-201. Immunity under Section 2-201 does not include an exception for willful and wanton misconduct. *In re Chicago Flood Litig.*, 176 Ill. 2d 179, 196 (1997).

Kenyon argues that Struck and Krieger were not immune under Section 2-201 because their actions were not part of their official job duties in that neither of them were required to take the actions that they did. This assertion represents a misunderstanding of immunity under Section 2-201. First, there can be no question that both Struck and Krieger acted within the scope of their

5

official positions with the District. As discussed above, Struck's job duties as Board President included serving as spokesperson for the Board. Struck undisputedly issued and signed his statement not as a private citizen, but in his capacity as Board President. Krieger was the District's Chief Human Resources Officer. Doc. 1-1 at 3, ¶ 4. His actions with respect to Kenyon were undertaken in that capacity, as Krieger obviously not have had any authority to investigate or discipline Kenyon except by virtue of his employment. Indeed, Kenyon is suing the Board for damages based upon Struck's and Krieger's actions.

That neither Struck nor Krieger were *required* to act as they allegedly did does not undermine their immunity argument. Indeed, the definition of a "discretionary" act is one in which an employee exercises personal deliberation and judgment in deciding whether to perform a particular act, and how or in what manner the act should be performed. *Monson v. City of Danville*, 2018 IL 122486, ¶ 30. As Board President and the Board's designated spokesperson, Struck's decision to issue his statement required him to balance competing interests and make a judgment call as to how to balance those interests. As he was not required to issue the statement, Struck plainly exercised persona judgment in deciding whether to issue his statement and what to say. Likewise, courts have recognized that decisions such as Krieger's regarding administration discipline and supervision of employees inherently involve determination of policy and the exercise of discretion. *LaPorta v. City of Chicago*, 277 F. Supp. 3d 969, 998–999 (N.D. Ill. 2017) (collecting cases). Kenyon's real argument is not that Struck and Krieger did not exercise discretion over matters of policy, but that they *abused their discretion*. However, immunity under Section 2-201 applies even where discretion is abused. 740 ILCS 10/2-201.

Kenyon also asserts that the Court should not consider immunity under the Tort Immunity Act until it has already determined that Kenyon and Struck are liable, citing *Coleman v. E. Joliet Fire*

6

*Prot. Dist.*, 2016 IL 117952, ¶ 55. Kenyon misreads *Coleman*. The court in *Coleman* noted that, *conceptually*, the question of immunity does not arise unless the defendant otherwise owes the plaintiff a duty of care and would be liable in the absence of immunity. *Id.* However, the court went on to note it may make sense for a court to resolve the issue of immunity before liability if doing so would be dispositive of the plaintiff's claims. *Id.*, ¶ 57. Nothing in *Coleman* precludes dismissal of a claim at the pleading stage where, as here, the pleadings demonstrate that immunity applies.

Kenyon fails to mention much less address Defendants' argument under Section 2-204, which provides that a public employee acting within the scope of employment "is not liable for an injury caused by the act or omission of another person." 745 ILCS 10/2-204. Again, Plaintiff alleges that she was harmed not by any direct action of Krieger or Struck, but by purported threats and harassment by other people who disagreed with her December 9, 2023 Instagram story. Because Plaintiff's alleged injuries flowed from the actions of third parties, Krieger and Struck are immune under Section 2-204. 745 ILCS 10/2-204.

Kenyon also fails to respond to the Board's arguments for dismissal of her "official capacity" claims against Struck and Krieger under the Tort Immunity Act. Doc. 31 at 14. Accordingly, those claims should also be dismissed.

### D. Kenyon Fails to State a Claim for Defamation Against Struck

In response to Defendants' argument that she failed to assert a claim of defamation against Struck, Kenyon argues that her pleading is sufficient because it recites the bare elements of a defamation claim in alleging that Struck "recklessly and falsely branded Plaintiff as an anti-Semite who "disparages the personal beliefs and human decency of a substantial portion of our student body." Kenyon fails to appreciate that a complaint must include "more than labels and conclusions,

7

3382524.2

and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, "a plaintiff can plead himself out of court by alleging facts which show that he has no claim." *Jackson v. Marion Cnty.*, 66 F.3d 151, 153 (7th Cir. 1995). "A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document." *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). Where an exhibit to the complaint contradicts allegations in the complaint, the exhibit typically controls. *Id.*

Given that Kenyon appended the full text of Struck's statement to her Amended Complaint (Doc. 1-1 at 135), the Court need not accept Kenyon's characterizations of the statement as true where they are not supported by Struck's actual words. In particular, Kenyon's assertion that Struck "branded [her] as an anti-Semite" is false, as Struck said no such thing. Indeed, as noted in Defendants' opening brief, Struck does not even identify Plaintiff by name or even job title, referring only to "a staff member." Because one would have to be aware of extrinsic facts to link Struck's statement to Kenyon, the statement cannot support a claim of defamation *per se*. *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 732 (1st Dist. 1990).

Kenyon also fails to allege a claim of defamation *per quod*, as she has not alleged "special damages" as needed to support such a claim. In her Response, Kenyon asserts that her allegations that she had to take leave from work and undergo therapy are sufficient to meet this requirement. However, in her defamation claim itself, Kenyon alleges only that she suffered "humiliation, loss of reputation, and emotional and mental anguish." Doc. 1-1 at 23, ¶ 127. Further, even if she had specifically referenced her alleged leave and therapy in her defamation count, her vague allegations are not sufficient to establish special damages for purposes of a defamation *per quod* claim. *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 416–17 (1996) (plaintiff's general allegation

that she was damaged monetarily by losing gainful employment and wages was not sufficient to sustain a claim of defamation *per quod*).

Kenyon's Response also fails to articulate precisely what false assertion of fact was conveyed by Struck's December 14 statement. Instead, Kenyon asserts only that the Court must accept the allegations of the Complaint and cannot assess the substantial truth of Struck's claim on a motion to dismiss. This is incorrect: dismissal is proper where the complaint alleges facts demonstrating that the alleged defamatory statement was substantially true. *Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 837 (N.D. Ill. 2015). Such is the case here. Struck's December 14 statement was about Kenyon's December 9 Instagram story. Both statements are included in the Amended Complaint, so no extrinsic information is needed for the Court to consider whether Struck's statement regarding Kenyon's post was substantially true or reasonably subject to an innocent construction.

Struck did not say that Kenyon's post was antisemitic or racist, but even if he had done so as Kenyon asserts, this would be a non-actionable statement of opinion, not a verifiable statement of fact. *Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988). Kenyon responds that Struck's statement was not a matter of mere opinion because it "clearly implies the existence of undisclosed facts, namely the Story." Doc. 46 at 13. A statement of opinion becomes actionable only if it implies a *defamatory* fact. *Suhadolnik v. City of Springfield*, 184 Ill. App. 3d 155, 186 (4th Dist. 1989). Kenyon's December 9, 2023 Instagram Story is not a "defamatory" fact. That Kenyon identifies the existence of her December 9, 2023 Instagram Story as the problematic fact disclosed in Struck's post is telling, as it makes clear that her primary complaint is not that Struck made false statements about her, but that *he called attention to her own words*, prompting criticism from others who disagreed with the views that she actually expressed.

### E. Plaintiff's False Light Claim Fails

Kenyon concedes in her Response that her false light claim essentially rises and falls on the same grounds as her defamation claim. Doc. 46 at 13. Count IV should therefore be dismissed for the same reasons as set forth above.

### F. Plaintiff's IIED Claims Against Struck and Krieger Fail

Kenyon's claim for intentional infliction of emotional distress also fails to meet the high bar for such claims under Illinois law as to either Struck or Krieger. To meet this bar, conduct must "go beyond all bounds of human decency." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). Again, Kenyon's sole claim against Struck is that he issued a statement in response to her Instagram Story, the full text of which is included in the Amended Complaint. As discussed above, the statement was not false or defamatory and did not even identify Kenyon by name or job position. Struck took issue with the natural implication of Kenyon's words; he said nothing about her personal or professional character and certainly did not call her an antisemite. Issuing a measured statement in response to an employee's public commentary on a highly sensitive and divisive political issue hardly counts as the sort of outrageous conduct necessary to support an intentional infliction of emotional distress claim. Any emotional distress that Kenyon experienced flowed from third parties taking issue *with her own words*, not Struck's statement.

Likewise, as to Krieger, the exhibit referenced in Plaintiff's Complaint (Doc. 35) makes clear that Kenyon was issued a written warning for sharing inappropriate material on an Intstagram account that was followed by multiple current students and student groups. Kenyon does not dispute that she posted about her sexual assault on her Instagram account or that the assault was referenced in the warning as one among several items that should not have been shared with students. Doc. 1-1 at 14, ¶¶ 74-76; Doc. 35. Again, employee discipline in itself does not rise to

the level of "outrageous" conduct sufficient to sustain an IIED claim. *Welsh v. Commonwealth Edison Co.*, 306 Ill.App.3d 148, 155 (1999). Further, the only reason for any discussion at all regarding the issue of the assault was that Kenyon asked to revise the warning by removing the reference to her post from the list of posts that the District found to be inappropriate material for her to share on an account followed by multiple current students. Doc. 1-1 at 15-16, ¶¶ 84-88. Merely asking Kenyon to explain the reason for her request to modify the warning hardly exceeded "all bounds of human decency."

## II. Conclusion

For the reasons set forth above and in their opening brief, Defendants the Board of Education of Township High School District 113, Daniel Struck, and Thomas Krieger respectfully ask the Court to dismiss Counts II through VII of the Amended Complaint.

Respectfully Submitted,

BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT 113, DANIEL STRUCK, and THOMAS KRIEGER, Defendants.

By: /s William R. Pokorny
       One of their attorneys

William R. Pokorny
wrp@franczek.com
Audrey H. Shinn
ahs@franczek.com
FRANCZEK P.C.
300 S. Wacker Dr.
Suite 3400
Chicago, IL 60606
(312) 986-0300