UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRITNEE KENYON, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>BOARD OF EDUCATION OF )<br>TOWNSHIP HIGH SCHOOL )<br>DISTRICT 113, DANIEL STRUCK, )<br>THOMAS KRIEGER, and MICHELLE )<br>HAMMER BERNSTEIN, )<br>)<br>    Defendants. )<br>) | Case No. 24-cv-09878<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Britnee Kenyon, filed a Complaint against Defendants Board of Education of Township High School District 113, Daniel Struck, Thomas Krieger, (together, "Board of Education Defendants") and Michelle Hammer Bernstein (collectively, "Defendants") alleging various federal and state law claims stemming from Plaintiff's Instagram post and Defendants' ensuing actions.

Before the Court is Board of Education Defendants' motion to dismiss Count II through VII for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), absolute immunity as to Daniel Struck, and immunity as to Daniel Struck and Thomas Krieger under the Tort Immunity Act, 745 ILCS 10/2-201, and Michelle Hammer Bernstein's ("Defendant Bernstein") motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and immunity under the First Amendment and the Illinois Citizen Participation Act, 735 ILCS 110/1 *et seq.* (together, the "Motions"). For the reasons set forth below, Board of Education Defendants' motion to dismiss is granted in part and denied in part [30] and Defendant Bernstein's motion to dismiss is granted in part and denied in part [25].

1

**BACKGROUND**

The following facts are accepted as true for the purposes of resolving the Motions.

Since 2019, Plaintiff, a Jewish woman, has been employed by the Board of Education of Township High School District 113 ("Defendant Board of Education") as the Theatre Director for Deerfield High School ("DHS"). Prior to the beginning of the 2023-2024 school year, Defendant Board of Education and Plaintiff's union executed a collective bargaining agreement ("CBA") that outlined, among other things, rights of staff members and procedures for investigations into misconduct. On December 9, 2023, Plaintiff reposted a story on her private Instagram account from author Ibram X. Kendi regarding the military conflict in Israel and Gaza (the "December 9th Instagram Story"). The December 9th Instagram Story was shared from Plaintiff's private account and was automatically removed after 24 hours. Defendant Michelle Hammer Bernstein ("Defendant Bernstein") saw or otherwise became aware of the December 9th Instagram Story. Thereafter, Defendant Bernstein, under pseudonym "Michelle Leah," created a post on the DHS Parent Group Facebook page accusing Plaintiff of posting "memes" that "slandered" Israel and called on parents to "call Bruce [Law] and send to the [Board of Education] if you agree." Defendant Bernstein posted the same content in two other Facebook groups. Upon information and belief, along with the three Facebook posts, Plaintiff alleges that Defendant Bernstein complained to Defendant Board of Education that Plaintiff was an antisemite and that the December 9th Instagram Story "slandered" Israel.

On December 14, 2023, Thomas Krieger, Chief Human Resources Officer for the Board of Education, ("Defendant Krieger") sent an email to Plaintiff ordering her to attend a pre-disciplinary hearing on December 15th. The email advised Plaintiff that the private sharing of the December 9th Instagram Story constituted harassment or bullying. Also on December 14th, Daniel Struck, President of the Board of Education, ("Defendant Struck") issued a statement (the "December 14th Statement").

2

Plaintiff alleges that the December 14th Statement, issued in response to the December 9th Instagram Story, portrayed Plaintiff as an antisemite who "disparages the personal beliefs and human decency of a substantial portion of [the] student body" and described the situation with Plaintiff as an "ongoing personnel matter." Plaintiff contends that the December 14th Statement was issued to more than 40,000 individuals in the Deerfield and surrounding communities. Plaintiff claims the December 14th Statement was issued prior to any communication with Plaintiff on the matter and resulted in Plaintiff receiving patently false, harassing, and threatening communications from parents in the Deerfield community.

On December 15, 2023, Plaintiff attended the pre-disciplinary hearing with Defendant Krieger, among others. During the meeting, Plaintiff explained her reasons for sharing the post, noting that she did not view the post as anti-Israel, that she was a practicing Jewish woman, and that she would never speak out against Jewish people. Defendant Krieger informed Plaintiff that Defendant Board of Education scheduled a second pre-disciplinary hearing on December 18th to discuss complaints it had received about Plaintiff's use of Snapchat to communicate with students, which was in violation of Board policies. Following the December 18th pre-disciplinary hearing, Defendant Board of Education opened an investigation into Plaintiff's use of Instagram and Snapchat. Plaintiff alleges this investigation was conducted in violation of requirements set forth in the CBA, among other policies.

Defendant Krieger sent Plaintiff a document titled "Written Reprimand" on January 9, 2024, that included a narrative section revealing the findings from the investigation. The Written Reprimand, which was to be made part of Plaintiff's employment record, claimed that photos posted on Plaintiff's private Instagram account, including Plaintiff in a bathing suit, Plaintiff in bed, and Plaintiff smoking a cigarette, violated school or district policy. One of the allegedly violative photos related to a post that detailed Plaintiff's experience as a victim of sexual assault. Plaintiff alleges that

3

the Written Reprimand falsely accused Plaintiff of "communicating with students on Snapchat about inappropriate topics, such as birth control." The Written Reprimand determined that, in addition to the other posts, the December 9th Instagram Story violated several policies. Plaintiff objected to the Written Reprimand. After being advised that the Written Reprimand would likely be released to the public, Plaintiff asked Defendant Krieger to edit the Written Reprimand to remove references to the sexual assault. Plaintiff met with Defendant Krieger on January 19, 2024 to discuss Plaintiff's proposed edits. During the January 19th meeting, Plaintiff alleges that Defendant Krieger forced Plaintiff to describe her reasons behind posting her sexual assault experience on Instagram. Plaintiff alleges that Defendant Krieger forced her to recount her sexual assault experience to a room full of men. On January 25, 2024, Krieger sent the revised Written Reprimand, which removed the reference to Plaintiff's sexual assault, to Plaintiff. The revised Written Reprimand also removed the full quote from the December 9th Instagram Story which Plaintiff alleges materially altered the meaning of the post. The revised Written Reprimand was placed in Plaintiff's personnel file. Plaintiff contends the Written Reprimand will remain in her personnel file in perpetuity and diminish Plaintiff's future employment opportunities.

Upon information and belief, Plaintiff contends that Defendant Board of Education and/or Defendant Krieger released the contents of the investigation to members of the community, including Defendant Bernstein. After learning that Plaintiff was not terminated from her employment, Defendant Bernstein posted another Facebook post "disseminat[ing] patently false and disparaging statements concerning [Plaintiff]." Plaintiff, again, received additional threats and harassment

4

following Bernstein's Facebook post. As a result of this ordeal, Plaintiff had to take a mental leave of absence from her job and undergo extensive therapy.

Plaintiff filed the lawsuit in Lake County Circuit Court on June 21, 2024. The case was removed to this Court on October 10, 2024. Board of Education Defendants and Defendant Bernstein filed their respective Motions on November 18, 2024.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).

**DISCUSSION**

    **I.    Board of Education Defendants' Motion to Dismiss**

Board of Education Defendants' move to dismiss Counts II through VII of Plaintiff's Amended Complaint. Board of Education Defendants' put forth four arguments in support of their motion: (1) dismissal of count II, breach of collective bargaining agreement, is warranted as the Illinois Educational Labor Relations Board ("IELRB") has exclusive jurisdiction over the CBA and Plaintiff fails to state a claim; (2) claims against Defendant Krieger are barred by absolute immunity; (3)

5

Defendants Krieger and Struck are immune under the Tort Immunity Act (the "Tort Act"); and (4) Plaintiff fails to state a claim against Defendants Krieger and Stuck for the state law claims.

Board of Education Defendants' motion also asks the Court to dismiss Plaintiff's claims against Defendants Krieger and Struck in their official capacity, noting that a suit against a public official in their official capacity is the same as a suit against the entity of which the public official is an agent. *Kentucky v. Graham,* 473 U.S. 159, 165 (1983). The Court agrees.[1]

1. *Count II: Breach of Collective Bargaining Agreement (Board of Education Defendant)*

Plaintiff brings a breach of collective bargaining agreement against Defendant Board of Education for actions the Board of Education took against Plaintiff stemming from the December 9th Instagram Story. Board of Education Defendant argues that the claim fails because (1) Plaintiff does not does not have standing to sue as a non-party to the CBA because her claim does not allege that the union breached its duty of fair representation; (2) the IELRB has exclusive jurisdiction over arbitration disputes stemming from alleged CBA violations; and (3) Plaintiff failed to exhaust her administrative remedies as required under the grievance procedure in the CBA prior to filing her claim. Plaintiff contends that the IELRB does not have exclusive jurisdiction because (1) Defendant Board of Education's decision to remove the case to federal court waives a supplemental jurisdiction argument and (2) the holding in *Carver v. Nall,* 172 F.3d 513, 516 (7th Cir. 1999) allows Plaintiff to bring all of her claims in federal court due to the varied nature of her claims and the parties involved as the IELRB would not have jurisdiction over all of the claims and all of the parties. Plaintiff also contends that she was not required to exhaust her administrative remedies as doing so would have been futile as Defendant Board of Education usurped Plaintiff's ability to comply with the grievance

---

[1] If Plaintiff chooses to amend her Complaint, her claims against Defendants Kreiger and Struck may procced in their individual capacity only.

procedure by Defendant Krieger and Defendant Struck taking control of the matter thereby preventing Plaintiff from complying with the grievance procedure.

Illinois courts have a strong policy rationale for raising claims requiring interpretation of collective bargaining agreements exclusively before the relevant labor relations board in an effort to avoid the uncertainty that would come from conflicting judicial interpretations of such agreements. *See Chi. Teachers Union Local 1 v. Bd. of Edu. of City of Chi.,* No. 12-c-10338, 2018 WL 1561724, at *4 (N.D. Ill. Mar. 30, 2018) (Alonso, J.) (collecting cases). In *Chicago Teachers Union Local 1*, the court found that a breach of covenant and fair dealing claim arising out of the CBA required interpretation of the CBA. 2018 WL 1561724, at *6. Adjudicating the breach of covenant and fair dealing claim would require the court to interpret the CBA to see if the union had any relevant contractual discretion. *See id.* The court determined that the Illinois Educational Labor Relations Act ("IELRA") divests a federal court of jurisdiction to adjudicate state law claims that would require the court to interpret the collective bargaining agreement. *See id.* at *4. Accordingly, the court determined that it did not have jurisdiction to adjudicate the breach of covenant and fair dealing claim. *See id.* at *6.

The Court finds the holding in *Chicago Teachers Union Local 1* persuasive. As Plaintiff's breach of the collective bargaining agreement is a state law claim, the Court would be required to interpret the CBA in adjudicating the claim. Because the breach of the collective bargaining agreement claim is only asserted against Defendant Board of Education, the Court does not find that requiring Plaintiff to assert the breach of contract claim in front of the IELRB will affect the Court's ability to adjudicate the remaining claims in this lawsuit. Accordingly, the Court grants Board of Education Defendants' motion to dismiss the breach of collective bargaining claim, with prejudice.[2]

2. *Absolute Immunity (as to Defendant Struck)*

---

[2] As the Court finds dismissal proper due to the exclusive jurisdiction vested in the IELRB to interpret the CBA, the Court will not address Defendant Board of Education's standing and failure to exhaust administrative remedies arguments.

Defendant Struck argues that Plaintiff's claims are barred against him based on absolute immunity. Plaintiff contends that Defendant Struck is not immune because he was not acting within the scope of his position when he issued the December 14th Statement.

Illinois common law recognizes absolute immunity for officials of the executive branch of local government for statements made within the scope of their official duties. *Roberts v. Board of Educ.*, 25 F.Supp.2d 866, 869 (N.D. Ill. Oct. 30, 1998) (Bucklo, J.) Immunity cannot be overridden by a showing of improper motivation, knowledge of a statement's falsity, or malice. *See Klug v. Chi. Sch. Reform Bd. of Trustees*, 197 F.3d 853, 861 (7th Cir. 1999).

Plaintiff references the list of official Board President duties in her opposition. Plaintiff contends that since "issuing a public statement concerning a schoolteacher's private Instagram post" is not included in the list of duties, Defendant Struck's issuance of the December 14th Statement was not in the scope of his official duties and therefore he is not subject to absolute immunity. As mentioned in the Board of Education Defendants' motion, one of the Board President's official duties is to "serve as or appoint the Board's official spokesperson to the media." The Complaint alleges that Defendant Struck's December 14th Statement was disseminated to "the greater Deerfield community." Missing from the Complaint, however, is any allegations that Defendant Struck disseminated the statement "to the media." The fact that Defendant Struck "issued the statement" generally does not necessarily mean that the statement was issued to the media. The Complaint is void of any allegations that Defendant Struck spoke to the media concerning the December 14th Statement, or otherwise. It is unclear whether Defendant Struck even served as the spokesperson to the media or if he appointed another individual to serve in the position. If the latter is true, Defendant Struck would not have been acting in the scope of his official duties and he would not be subject to absolute immunity. At this stage in the litigation, there is not enough evidence to find that Defendant Struck was acting in the

8

scope of his official duties in disseminating the December 14th Statement. The Court, therefore, finds that Defendant Struck is not entitled to absolute immunity at this time.

       *3. Tort Immunity Act (as to Defendants Krieger and Struck)*

Defendants Krieger and Struck contend that they are immune from Plaintiff's claims under Section 2-201 the Tort Act as public employees because Plaintiff's claims implicate policy decisions whereby Defendants Krieger and Struck exercised discretion in their actions toward Plaintiff. Plaintiff argues that it would be premature to apply the Tort Act as there has been no determination as to whether Defendants Krieger and Struck actions were in the "execution or enforcement of any law" and covered by 745 ILCS 10/2-202 or whether their actions were a "determination of policy" and covered by 745 ILCS 10/2-201.

Defendants Krieger and Struck assert immunity under 745 ILCS 10/2-201, not 2-202, so any argument Plaintiff asserts under 2-202 is inapplicable. Therefore, the issue is whether Defendants Krieger and Struck are immune under 2-201 of the Tort Act. 745 ILCS 2/201 provides "[e]xcept as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

Illinois courts follow a two-part test in determining whether an employee is subject to immunity under the Tort Act for discretionary policy decisions: (1) the employee must hold either a position involving the determination of a policy or a position involving the exercise of discretion, and (2) the employee must also have engaged in both the determination of policy and the exercise of discretion when performing the act or omission from which the plaintiff's injury resulted. *See Doe I v. Bd. of Edu. of City of Chi.*, 364 F.Supp.3d 849, 866 (N.D. Ill. 2019) (Kendall, J.) A policy choice is one "that requires the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." *See Doe I,* 364 F.Supp.3d at

scope of his official duties in disseminating the December 14th Statement. The Court, therefore, finds that Defendant Struck is not entitled to absolute immunity at this time.

       *3. Tort Immunity Act (as to Defendants Krieger and Struck)*

Defendants Krieger and Struck contend that they are immune from Plaintiff's claims under Section 2-201 the Tort Act as public employees because Plaintiff's claims implicate policy decisions whereby Defendants Krieger and Struck exercised discretion in their actions toward Plaintiff. Plaintiff argues that it would be premature to apply the Tort Act as there has been no determination as to whether Defendants Krieger and Struck actions were in the "execution or enforcement of any law" and covered by 745 ILCS 10/2-202 or whether their actions were a "determination of policy" and covered by 745 ILCS 10/2-201.

Defendants Krieger and Struck assert immunity under 745 ILCS 10/2-201, not 2-202, so any argument Plaintiff asserts under 2-202 is inapplicable. Therefore, the issue is whether Defendants Krieger and Struck are immune under 2-201 of the Tort Act. 745 ILCS 2/201 provides "[e]xcept as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

Illinois courts follow a two-part test in determining whether an employee is subject to immunity under the Tort Act for discretionary policy decisions: (1) the employee must hold either a position involving the determination of a policy or a position involving the exercise of discretion, and (2) the employee must also have engaged in both the determination of policy and the exercise of discretion when performing the act or omission from which the plaintiff's injury resulted. *See Doe I v. Bd. of Edu. of City of Chi.*, 364 F.Supp.3d 849, 866 (N.D. Ill. 2019) (Kendall, J.) A policy choice is one "that requires the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." *See Doe I,* 364 F.Supp.3d at

866-67 (internal citations omitted). "A discretionary act is one unique to a particular public office; in contrast, a ministerial act is one which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *See id.* at 867. Section 2-201 provides immunity for both negligent and willful and wanton misconduct. *See id.* at 866.

At the motion to dismiss stage, the Court cannot conclude that Defendants Krieger and Struck are immune under the Tort Act. The Complaint does not contain conclusive evidence that Defendant Krieger's conversation with Plaintiff regarding her social media account and issuance of the Written Reprimand nor Defendant Struck's publication of the December 14th Statement were a determination of policy and an exercise of discretion. Defendants Krieger and Struck's argument in support of immunity under the Tort Act merely states the requirements for immunity under the Tort Act and is therefore insufficient. *See Knox Coll.,* 88 Ill. 2d at 424 (1981). Accordingly, the Court finds that at this stage in the litigation, Defendants Krieger and Struck are not subject to immunity under the Tort Act.

    *4. Count III: Defamation Per Se (as to Defendant Struck)*

Defendant Struck argues that Plaintiff fails to state a claim for defamation *per se* because the December 14th Statement does not identify Plaintiff, was not false, and was a non-actionable statement of opinion that cannot be subject to a defamation claim. Plaintiff contends that she properly stated a claim for defamation *per se* as the December 14th Statement was published to members of the Deerfield community and it recklessly and falsely branded Plaintiff as an antisemite.

To allege defamation *per se*, the plaintiff must allege that "(1) defendant made a false statement about the plaintiff, (2) the defendant made an unprivileged publication of that statement to a third party, and (3) the publication caused damages." *Prakash,* 2020 IL App (1st) 191819, at ¶ 55. Relevant here, words that impute a person lacks integrity in performing her employment duties and words that prejudice a party, or impact a lack of ability, in her profession are considered defamation *per se*, meaning

10

that they are "so obviously and materially harmful to the plaintiff that reputation to [her] injury may be presumed." *See id.* at ¶ 55 (internal citations omitted). "A complaint for defamation must set forth the words alleged to be defamatory clearly and with particularity." *See id.* (internal citations omitted). Where an individual is not named in defamatory material, the material is not defamatory *per se* as to that person. *Schaffer v. Zekman,* 196 Ill.App.3d 727, 732 (1990). In such a situation, extrinsic facts and circumstances must be pleaded to establish that the publication was defamatory as to the individual and special damages must be pleaded with particularity. *Schaffer,* 196 Ill.App.3d at 732.

Here, the Court need only focus on the fact that the December 14th Statement does not explicitly name Plaintiff but refers to a "staff member." It does not refer to Plaintiff by name nor does it mention theater directors, nor does it allude to the December 9th Instagram Story as the basis for the publication. At most, it refers to a group that Plaintiff is a member of. Without more, a statement referring to an employer and individual's occupation generally is not so obviously harmful to Plaintiff to support a defamation claim.

As the December 14th Statement does not refer to Plaintiff, Plaintiff is required to allege extrinsic facts showing the defamatory nature of the publication and special damages. Plaintiff fails to do so. Plaintiff fails to allege extrinsic facts to explain the injurious meaning of the defamatory statement. *Cf. Chang Hyun Moon v Kang Jun Liu,* 2015 IL App (1st) 143606, at ¶ 13 (2015) (finding plaintiff pled extrinsic facts based on his Korean culture). Plaintiff also fails to plead special damages. General allegations of loss of income, damage to business, or emotional distress are insufficient to allege special damages while allegations of loss of a specific dollar amount, business opportunity, or customer may suffice. *See Kurczaba v. Pollock,* 318 Ill.App.3d 686, 694-95 (2000) (collecting cases). Here, Plaintiff alleges that she suffered "humiliation, loss of reputation, and emotional health and anguish" due to the December 14th Statement. This is insufficient. *See Anderson v. Vanden Dorpel,* 172 Ill.2d 399, 412, 416-17 (1996) (holding that statements that plaintiff "has been damaged monetarily by

11

losing gainful employment and wages" and "has suffered great mental pain and anguish and incurred great expense for the treatment thereof" insufficient to satisfy special damages requirement). Accordingly, the Court grants Board of Education Defendants' motion to dismiss the defamation *per se* claim against Defendant Struck, without prejudice.

> 5. *Count IV: False Light Invasion of Privacy (Defendant Struck)*

Defendant Struck argues that Plaintiff's false light invasion of privacy claim must be dismissed because, like the defamation *per se* claim, the statement does not identify Plaintiff and Plaintiff fails to plead extrinsic facts and special damages to support the claim. Plaintiff contends that she sufficiently alleged her defamation *per se* claim, so it follows that the false light invasion of privacy claim should not be dismissed.

To state a claim for false light invasion of privacy, a plaintiff must show (1) she was placed in a false light before the public as a result of defendant's actions; (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (3) defendant acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false. *Kirchner v. Greene,* 294 Ill.App.3d 672, 682 (1998). Reckless disregard means that the defendant had a "high degree of awareness" that the statement was probably false or "entertain[ed] serious doubts as to its truth." *See Jacobson v. CBS Broadcasting, Inc.,* 2014 IL App (1st) 132480, at ¶ 36.

As Plaintiff concedes that her false light invasion of privacy claim rises and falls with her defamation *per se* claim, the Court finds that the false light invasion of privacy claim fails for the same reasons as Plaintiff's defamation *per se* claim. *See supra* Section I(4). Accordingly, the Court grants Board of Education Defendants' motion to dismiss the false light invasion of privacy claim against Defendant Struck, without prejudice.

> 6. *Counts V: Intentional Infliction of Emotional Distress (Defendant Struck)*

Defendant Struck argues that Plaintiff fails to state a claim for intentional infliction of emotional distress ("IIED") because the December 14th Statement, the sole basis for Plaintiff's claim against Defendant Struck, did not identify Plaintiff by name and did not state that Plaintiff was an antisemite or that her words were antisemitic. Plaintiff contends that Defendant Struck, as Board President, abused his actual and apparent power over Plaintiff, a teacher, and acted outside the scope of his official duties in issuing the December 14th Statement without verifying its accuracy, knowing that portraying Plaintiff as someone who "disparage[d] the personal beliefs and human decency of a substantial percentage of [the] student body" would, and indeed did, elicit an emotional response from the community.

To state an IIED claim under Illinois law, a plaintiff must show that (1) the conduct involved is truly extreme and outrageous; (2) defendant either intended that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct caused severe emotional distress. *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 268-9 (2003). To qualify as outrageous, the nature of defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society. *Feltmeier,* 207 Ill.2d at 274. The conduct must go beyond mere insults, indignities, threats, annoyances, petty oppressions or trivialities. *Lundy v. City of Calumet City,* 209 Ill.App.3d 790, 793 (1991). Whether defendant holds a position of authority over plaintiff, abuses that authority, or maintains power to affect the plaintiff's interests is a particularly relevant factor in determining whether defendant's conduct rises to the level of extreme and outrageous. *See Benton v. Little League Baseball, Incorporated,* 2020 IL App (1st) 190549, at ¶ 65.

The Court finds that Plaintiff's IIED claim fails. Similar to her defamation *per se* and false light of invasion claims, the December 14th Statement does not identify Plaintiff. While Defendant Struck is the Board President, Plaintiff fails to allege how the December 14th Statement, that does not identify

Plaintiff, is sufficient to sustain an IIED claim. Accordingly, the Court grants Board of Education Defendants' motion to dismiss the IIED claim against Defendant Struck, without prejudice

       7. *Count VI: IIED (Defendant Krieger)*

Defendant Krieger claims that Plaintiff's IIED claim fails because the basis of the claim, namely Defendant Krieger's involvement in the investigation of complaints regarding Plaintiff's social media accounts and the resulting reprimand, involves distress resulting from workplace discipline and other employment actions, which is insufficient to support an IIED claim. *See Welsh v. Commonwealth Edison Co.,* 306 Ill.App.3d 148, 155 (1999). Plaintiff contends that Defendant Krieger's conduct in requiring Plaintiff, a victim of sexual assault, to explain her reasoning behind her decision to post her sexual assault experience on her private Instagram account to a room full of men in order for the Board to consider omitting the reference to her sexual assault experience in the Written Reprimand satisfactorily the elements in an IIED claim.

"Behavior that otherwise might be considered merely rude, abrasive or inconsiderate may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to turmoil." *See Meehan v. Loyola University of Chicago,* No. 16-C-10481, 2017 WL 2424225, at *5 (N.D. Ill. June 5, 2017) (Ellis, J.) (internal citations omitted). Here, Plaintiff alleges that Defendant Krieger, with knowledge of her sexual assault experience, required her to explain to a room full of men why she decided to post her experience on her private social media in order to omit the sexual assault reference in the Written Reprimand. Taking Defendant Krieger's knowledge about Plaintiff's sexual assault experience and his position of authority into consideration, at this stage in the litigation, the Court cannot definitively conclude that Plaintiff has failed to plead that Defendant Krieger's actions were extreme and outrageous to support an IIED claim. Accordingly, the Court denies Board of Education Defendants' motion to dismiss the IIED claim against Defendant Krieger.

       8. *Count VII: Indemnification (Board of Education)*

Defendant Board of Education contends that it is immune under Section 2-109 of the Tort Act where its employees are not liable and under Section 2-107 of the Tort Act which prohibits imputing liability to a local public entity for any action of its employees that is libelous or slanderous. Plaintiff does not address this argument.

As the Court finds that at least one state law claim, the IIED claim against Defendant Krieger, may proceed and is permitting Plaintiff to amend her complaint as to the other state law claim, it will not dismiss the indemnification claim at this stage in the litigation.

## II.     Defendant Bernstein's Motion to Dismiss

Plaintiff brings three claims against Defendant Bernstein: Count VIII (defamation *per se*), Count IX (false-light invasion of privacy), and Count X (tortious interference with contractual relations). Defendant Bernstein moves to dismiss all counts, arguing that (1) she is immune from prosecution under the Illinois Citizen Participation Act; (2) her statements are protected by the First Amendment; and (3) Plaintiff fails to state a claim against Defendant Bernstein under Rule 12(b)(6).

### 1. *Immunity Under The Illinois Citizen Participation Act*

The Illinois Citizen Participation Act (the "ICPA") was created to combat SLAPP (Strategic Lawsuits against Public Participation) lawsuits. The goal of SLAPP lawsuits is to "prevent[] citizens from exercising their political rights or punishing those who have done so." *See Prakash v. Parulekar,* 2020 IL App (1st) 191819, at ¶ 33, as modified on denial of reh'g (Dec. 3, 2020) (internal citations omitted). Plaintiffs who filed SLAPP lawsuits do not anticipate victory, but rather file the lawsuit with the purpose of chilling a defendant's speech or protest activity with the threat of money damages. *See Prakash,* 2020 IL App (1st) 191819, at ¶ 33. The ICPA was enacted "to give relief, including monetary relief, to citizens who have been victimized by meritless, retaliatory SLAPP lawsuits because of their act or acts made in furtherance of constitutional rights to petition, speech, association, and participation in government." *See id.* at ¶ 33. A defendant is granted immunity under the ICPA if (1)

15

defendant's acts were in furtherance of her rights to petition, speak, associate, or otherwise participate in government in an effort to obtain favorable government action; and (2) plaintiff's claims were solely based on, related to, or in response to defendant's acts in furtherance of her rights of petition, speech, association, or other participation in government (which can be satisfied if defendant demonstrates the lawsuit is meritless and was filed in retaliation to defendant's protected activities in an effort to chill defendant's government participation). *See id.* If defendant can satisfy the first two prongs, the burden shifts to plaintiff to produce clear and convincing evidence that defendant's acts were not genuinely aimed at receiving favorable government action. *See id.* While the ICPA is aimed at preventing the filing of meritless lawsuits, its purpose is not to protect those who commit tortious acts and then seek refuge in immunity conferred by the ICPA. *See id.* at ¶ 35.

Defendant Bernstein contends that her statements on social media are protected by the ICPA as her posts call on the electorate to take action as it relates to the conduct of Plaintiff, a government employee. Defendant Bernstein argues that she was sued for these protected statements, Plaintiff's lawsuit amounts to a SLAPP lawsuit and, therefore, Defendant Bernstein is immune under the ICPA. The Court does not agree.

Without addressing the merits of Plaintiff's claims, the Court finds that Plaintiff's lawsuit was not *solely* based on, related to, or in response to the acts of Defendant Bernstein in furtherance of the rights of petition and speech. Plaintiff's suit does not resemble "a strategic lawsuit intended to chill participation in government or to stifle political expression." *See Sandholm v. Kuecker,* 2012 IL 111443, at ¶ 57. At this stage in the litigation, it is reasonable to conclude that Plaintiff's Complaint, filed six months after Defendant Bernstein's actions, was not filed to interfere with or burden Defendant Bernstein's free speech and petition rights, but to seek damages for the personal harm to her reputation from Defendant Bernstein's alleged defamatory and tortious acts. Defendant Bernstein has not shown that Plaintiff's lawsuit was *solely* based on her petitioning activities, as required under

16

the ICPA. Accordingly, at this stage in the litigation, the Court finds that Defendant Bernstein is not entitled to immunity under the ICPA. .[3]

    2. *Count VIII: Defamation*

The Court incorporates by reference the defamation elements in Section I(4).

Defendant Bernstein argues that the holding in *Stevens v. Tillman,* 855 F.2d 394 (7th Cir. 1998) is "strikingly on point here and dispositive." The Court disagrees. Plaintiff alleges that Defendant Bernstein's statements were more explicit and derogatory in nature than merely calling someone "racist." Plaintiff contends that the statements included allegations that Plaintiff lacked integrity in performing her job duties and prejudiced Plaintiff in her profession, making such statements defamatory *per se*.

As pled, Plaintiff's Complaint sets forth a summary of the types of statements that Defendant Bernstein allegedly made instead of a precise and particular account of the alleged statements, merely attaching screenshots of Defendant Bernstein's statements as exhibits. While in general the lack of specificity could prevent the Court from determining if an alleged statement is defamatory, the record before the Court, including screenshots of Defendant Bernstein's posts, indicates the Plaintiff sufficiently states a *per se* defamation cause of action.

Nor does the Court find Defendant Bernstein's "public official" argument to be persuasive. Defendant Bernstein contends that Plaintiff is a public figure, and therefore must plead "actual malice" in alleging defamation. Again, Defendant Bernstein compares Plaintiff, a high school theater director, to the *Stevens* plaintiff, an elementary school principal, in arguing that public figures include school employees who possess great discretion over the operation of schools and whose performance is

---

[3] The Court likewise finds Defendant Bernstein's First Amendment argument fails as there is not enough evidence to conclude that her statements were one of "opinion" nor that Plaintiff is considered a public figure. "Statements of opinion can be protected by the First Amendment, but one cannot couch factual statements in language of opinion and claim that the speech is suddenly protected." *See Rivera v. Lake County,* 974 F.Supp.2d 1179, 1192 (N.D. Ill. Sept. 26, 2013) (Leinenweber, J.) (internal citations omitted).

"open to public comment." It would be absurd to conclude that a theater director has the same discretion over the operation of the high school as that of a principal, especially in light of the lack of evidence supporting such conclusion. Therefore, the Court finds that Plaintiff is not a public figure and was not required to plead actual malice.

Accordingly, the Court denies Defendant Bernstein's motion to dismiss the *per se* defamation claim.

### 3. Count IX: False Light Invasion of Privacy

The Court incorporates by reference the defamation elements in Section I(4).

Defendant Bernstein contends that the false light invasion of privacy claim must be dismissed for the same reasons as the defamation claim: Plaintiff's failure to claim actual malice or falsity. Plaintiff alleges that her false light invasion of privacy claim sufficiently alleges that Defendant Bernstein's statements were false, made without any factual basis, and with reckless disregard for the truth in order to fire Plaintiff.

As mentioned in the Court's analysis of Plaintiff's defamation claim against Defendant Bernstein, Plaintiff's Complaint contains screenshots and exhibits of Defendant Bernstein's purported statements that suggest the existence of a false light invasion of privacy claim. The Court, therefore, denies Defendant Bernstein's motion to dismiss the false light invasion of privacy claim.

### 4. Count X: Tortious Interference with Contractual Relations

To state a claim for tortious interference with contractual relations, Plaintiff must show (1) a valid, enforceable contract between plaintiff and a third party; (2) defendant's awareness of the contractual relationship; (3) defendant's intentional and unjustified inducement of a breach of the contract; (4) subsequent breach by the third party as a consequence of defendant's wrongful actions; and (5) damages as a result of the breach. *Audition Div., Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.,* 120 Ill.App.3d 254, 258 (1983).

The Complaint merely alleges that Defendant Bernstein had knowledge of the CBA because Defendant Bernstein was aware that Plaintiff was employed as a high school theater director. This is not enough to meet the second prong. Knowledge of employment does not equate of knowledge of contract. Nor does Plaintiff properly allege that that Defendant Bernstein intentionally and maliciously induced Board of Education Defendant to breach the CBA with Plaintiff. Simply paraphrasing statements of law without alleging supporting facts is insufficient. *See Knox Coll.,* 88 Ill. 2d at 424 (1981).

Accordingly, the Court grants Defendant Bernstein's motion to dismiss the tortious interference with contractual relations claim, without prejudice.

**CONCLUSION**

For these reasons, the Court grants in part and denies in part Board of Education Defendants' motion to dismiss [30] and grants in part and denies in part Defendant Bernstein's motion to dismiss [25]. Plaintiff is granted leave to amend her complaint within 21 days if she has a good faith basis for believing she can cure the pleading deficiencies identified in this opinion. If Plaintiff does not file her amended complaint within 21 days from the date of this Order, the claims will be dismissed with prejudice.

**IT IS SO ORDERED.**

Date: 4/14/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge